51 A.3d 775

**Adam C. GUTLOFF**

v.

**STATE of Maryland.**

**No. 207, Sept. Term, 2011.**

Court of Special Appeals of Maryland.

Aug. 31, 2012.

Amy E. Brennan (Paul B. DeWolfe, Public Defender, on the brief), Baltimore, MD, for Appellant.

Cathleen C. Brockmeyer (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for Appellee.

Panel: DEBORAH S. EYLER, KEHOE, IRMA S. RAKER, (Retired, Specially Assigned), JJ.

EYLER, DEBORAH S., J.

Adam C. Gutloff, the appellant, was convicted by a jury in the Circuit Court for Montgomery County of possession of drug paraphernalia, simple possession of marijuana, second-degree assault, resisting arrest, and negligent driving. The court sentenced him to seven years' incarceration for second-degree assault, with all but 50 days suspended in favor of five years' probation; consecutive sentences of two and one years respectively for resisting arrest and possession of marijuana, with their entire terms suspended; and fines of $500 for possession of drug paraphernalia and $140 for negligent driving, the former of which was suspended. The appellant was not represented by counsel at any time in the course of the proceedings.

The appellant noted a timely appeal, in which he asserts that the circuit court failed to comply with the dictates of Rule 4–215 before finding a waiver of counsel.[1] For the following reasons, we agree, and shall reverse the judgments and remand the case to the circuit court for further proceedings.

## FACTS AND PROCEEDINGS

On November 22, 2010, Officer Kevin Correa of the Montgomery County Police Department was on patrol on Arcola Avenue when he saw the appellant speed around a car that had stopped in front of him, "almost causing a collision." Officer Correa made a traffic stop of the appellant's car, exited his police vehicle, and approached the appellant's car on foot. As the officer neared the appellant's car, the appellant rolled down his window. Officer Correa could smell the odor of burnt marijuana emanating from inside the appellant's car. He asked the appellant to get out of the car. The appellant

---

1. The appellant phrases his single question for review as follows:
 Did the circuit court err by failing to comply with Rule 4–215 before finding that Mr. Gutloff had waived his right to counsel?

became agitated and refused to exit. A struggle ensued, during which the appellant struck Officer Correa's hand and tried to close the car window on the officer's arm. Although Officer Correa told the appellant that he was under arrest, the appellant still refused to get out of the car and proceeded to repeatedly strike Officer Correa's arm with the car door.

Montgomery County Police Sergeant Thomas Curtis arrived on the scene in time to witness the struggle. Other officers arrived as well. After Sergeant Curtis managed to incapacitate the appellant with a taser, the other officers arrested him. Officers Correa and John King conducted a search of the appellant's car. There Officer Correa found sticks and stems and a bag of loose marijuana.

On November 22, 2010, the appellant was charged in the District Court of Maryland in Montgomery County with possession of drug paraphernalia, simple possession of marijuana, second-degree assault, and resisting arrest.[2] He also was charged by citation with three traffic offenses, including negligent driving.[3] He appeared before a District Court Commissioner for a bond hearing, at which time he was given a written "Notice of Advice of Right to Counsel." [4]

---

**2.** *See* respectively Md.Code (2002, 2010 Supp.), §§ 5–619, 5–601, 3–203, and 9–408 of the Criminal Law Article ("CL").

**3.** The two traffic offenses other than negligent driving later were *nolle prossed.*

**4.** The appellant placed his initials next to the following three sentences of that notice:

6. If you want a lawyer but do not have the money to hire one, the Public Defender may provide a lawyer for you. The court clerk will tell you how to contact the Public Defender.

7. If you want a lawyer but you cannot get one and the Public Defender will not provide one for you, contact the court clerk as soon as possible.

8. **DO NOT WAIT UNTIL THE DATE OF YOUR TRIAL TO GET A LAWYER.**

(Emphasis in original.) Any advisements by the District Court Commissioner would not satisfy Rule 4–215. *See Johnson v. State,* 355 Md. 420, 455, 735 A.2d 1003 (1999).

The appellant prayed a jury trial and the case was transferred to the circuit court.

We shall recite additional facts as they relate to the issue before us.

## DISCUSSION

### Standard of Review

 We review *de novo* whether the circuit court complied with Rule 4–215. Strict compliance is required. *Webb v. State,* 144 Md.App. 729, 741, 800 A.2d 42 (2002).

### Rule 4–215

At the time of the proceedings in the circuit court in this case, Rule 4–215 provided, in relevant part:

**Rule 4–215. Waiver of counsel.**

(a) **First appearance in court without counsel.** At the defendant's first appearance in court without counsel, or when the defendant appears in the District Court without counsel, demands a jury trial, and the record does not disclose prior compliance with this section by a judge, the court shall:

(1) Make certain that the defendant has received a copy of the charging document containing notice as to the right to counsel.

(2) Inform the defendant of the right to counsel and of the importance of assistance of counsel.

(3) Advise the defendant of the nature of the charges in the charging document, and the allowable penalties, including mandatory penalties, if any.

(4) Conduct a waiver inquiry pursuant to section (b) of this Rule if the defendant indicates a desire to waive counsel.

(5) If trial is to be conducted on a subsequent date, advise the defendant that if the defendant appears for trial without counsel, the court could determine that the defendant waived counsel and proceed to trial with the defendant unrepresented by counsel.

The clerk shall note compliance with this section in the file or on the docket.

(b) **Express waiver of counsel.** If a defendant who is not represented by counsel indicates a desire to waive counsel, the court may not accept the waiver until after an examination of the defendant on the record conducted by the court, the State's Attorney, or both, the court determines and announces on the record that the defendant is knowingly and voluntarily waiving the right to counsel. If the file or docket does not reflect compliance with section (a) of this Rule, the court shall comply with that section as part of the waiver inquiry. The court shall ensure that compliance with this section is noted in the file or on the docket. At any subsequent appearance of the defendant before the court, the docket or file notation of compliance shall be prima facie proof of the defendant's express waiver of counsel. After there has been an express waiver, no postponement of a scheduled trial or hearing date will be granted to obtain counsel unless the court finds it is in the interest of justice to do so.

The appellant contends the circuit court erred by failing to comply with Rule 4–215 in numerous ways. Specifically, he argues that the circuit court failed to inform him of the importance of the assistance of counsel and of the nature of the charges and the potential penalties, and failed to conduct a waiver inquiry pursuant to subsection (b) of the Rule. (He maintains that the District Court did not inform him of such either.) The State counters that the appellant's conduct before the circuit court made compliance with the Rule impossible. We disagree with the State and explain.

The appellant first appeared before the District Court on January 13, 2011, without counsel. As soon as the case was called, the appellant launched into a challenge to the court's jurisdiction, which became a recurring theme in the pretrial proceedings in this case. The following colloquy took place during the January 13, 2011 District Court appearance:

[THE APPELLANT]: I am here for this matter under threat, duress and coercion and I'm appearing under protest without prejudice in my proper person. My status—

THE COURT: What's your name?

[THE APPELLANT]: My status for the record is Adam Clifton Henry Gutloff. I'm also American, sui juris and propria persona and info life, not to be confused with the entity in question.

[PROSECUTOR]: Your honor, my purpose in calling this case at this point in time is just for status. I have officers right now going to get drugs from this case. I am anticipating needing a chemist. I don't want to bring either of those, I don't want the officer to have to get the drugs or the chemist to have to come in if we're not going to proceed today. I want to make sure this is going to be a trial today.

[THE APPELLANT]: Objection. I—

[PROSECUTOR]: I haven't been able to speak with this Defendant.

[THE APPELLANT]: Objection. I claim common law jurisdiction and this is a de facto Court enforcing statutory law, not a du jour Court of common law. There is no contract of equity or indictment of a grand jury for common law jurisdiction here at all.

THE COURT: Are you going to request a continuance to obtain an attorney?

[THE APPELLANT]: No, I'm filing a Motion to Dismiss Without Prejudice.

THE COURT: And where's that motion?

[THE APPELLANT]: It's in both records. It's been filed with the Court and it's been filed with the State's Attorney.

THE COURT: Uh-huh. So you understand that you are entitled to be represented by an attorney of your choice?

[THE APPELLANT]: *I do not understand that.* I, I have the Constitutional right to declare my status and challenge the jurisdiction of the Court. And I'm challeng-

ing the jurisdiction of the Court, thereby, they cannot proceed without proving jurisdiction on the record and I can cite that Court case for you.

THE COURT: You're aware that you do have a right to an attorney, if you wish?

[THE APPELLANT]: I am aware of my rights.

THE COURT: All right. And if you can't afford to hire private counsel, you may qualify for representation by an attorney with the Public Defender's Office at no significant cost to you?

[THE APPELLANT]: I do not require any representation. All that I require is that the Court prove its jurisdiction on the record before it can proceed.

THE COURT: All right. So you wish to proceed today without the assistance of an attorney?

[THE APPELLANT]: I object, I object to that. For the record, on the record, and let the record show, I'm challenging the jurisdiction of the Court and the Court cannot proceed without proving jurisdiction and that is cited in Court case *Hagens v. Levine,* Supreme Court case.

THE COURT: It's not in the file.

[THE APPELLANT]: It's in the file. Check the file. It's on record.

THE COURT: All right. Unless you tell me—

[PROSECUTOR]: Your Honor, I do have a copy of the Motion if Your Honor would like to see it.

THE COURT: Unless you tell me, yes, you wish an attorney, I am going to construe from your statements that you wish to proceed today without the assistance of an attorney.

[THE APPELLANT]: This Court cannot proceed without proving jurisdiction for the record.

THE COURT: All right. So—

[THE APPELLANT]: I've cited the Court case for you on the record.

THE COURT:—I'll determine you've waived your right to an attorney.

[THE APPELLANT]: I object. I'm challenging the jurisdiction of the Court.

THE COURT: All right. Your objection is overruled.

[THE APPELLANT]: This is a jurisdictional matter at this point. I don't understand how the Court can proceed without putting jurisdiction on the record. It says, "The law requires proof of jurisdiction to appeal on the record of the administrative agency and all administrative proceedings." That's also *Hagens and Levine*, Supreme Court case.

THE COURT: Well, you're charged with possession of marijuana on Arcola Avenue at University Boulevard, Montgomery County.

[THE APPELLANT]: I already stated that, I already stated my status for the record and that is not to be confused with the entity in question.

THE COURT: All right. To answer your earlier question, the Court has jurisdiction so we will proceed.

[THE APPELLANT]: It does not have jurisdiction. "If the Court's enforcing, those statutes do not judicially," "do not act judicially but ministerially having no judicial immunity"—

THE COURT: See a copy. We don't have a copy.

[THE APPELLANT]:—"and unlike Courts of law, do not obtain jurisdiction by service of process, nor even an arrest and compelled appearance." That's *Boswell v. Otis*, Supreme Court case.

THE COURT: All right. Well, good luck on your appeal.

(Emphasis added.)

The District Court judge then attempted to determine whether the appellant was seeking a jury trial. The transcript reflects that the appellant continued to make assertions about jurisdiction, including that the District Court lacked jurisdic-

tion even to consider that question. For example, the appellant expounded upon his motion to dismiss:

> THE COURT: All right. If there's anything you wish to tell me on your Motion to Dismiss, now is the time.

> [THE APPELLANT]: I most, I filed a Motion to Dismiss because of the lack of jurisdiction and proper venue. If there was jurisdiction then I'll, then I would request a trial by jury and this would be determined by a trial by jury. But there's no indictment or no contract of equity compelling me to any obligation with this Court.

After the District Court denied the appellant's motion to dismiss on jurisdictional grounds, the appellant requested a jury trial. The case was transferred that same day to the circuit court. The appellant was taken before a circuit court judge and again launched into his jurisdictional argument:

> THE COURT: Thank you. And, sir, good afternoon.

> [THE APPELLANT]: Good afternoon.

> THE COURT: Are we ready for trial?

> [THE APPELLANT]: I am challenging the jurisdiction, so—and just for the record, I'm here under threat, duress, and coercion, under protest, without prejudice, reserving all my rights. And my status for the record is Adam Clifton Henry Gutloff, a Moorish American, sui juris, in propria persona, and in full life.[5]

---

**5.** "Noble Drew Ali founded the Moorish Holy Temple of Science in 1913 in Newark, New Jersey, as a vehicle to advance the tenets of the Islamic faith, as he viewed them to be, in the United States." *El Bey v. Moorish Sci. Temple of Am., Inc.*, 362 Md. 339, 344, 765 A.2d 132 (2001). The jurisdictional argument that the appellant was making here was made, and rejected, in *United States v. James*, 328 F.3d 953 (7th Cir.2003). In that case, the United States Court of Appeals for the Seventh Circuit observed:

> Indicted for selling marijuana and possessing a gun in connection with that crime, Frederick James offered the "defense" that his ancestors came from Africa, that he is therefore a Moorish national, and that as a result he need obey only those laws mentioned in an ancient treaty between the United States and Morocco. This view of legal obligations is espoused by many adherents to the Moorish Science Temple, which was founded in 1913 by prophet Noble Drew

THE COURT: Very good. Shall we pick a jury? Folks, you can have a seat.

[THE APPELLANT]: Well—

THE COURT: Ready for jury selection?

[THE APPELLANT]:—I claim common-law jurisdiction; so I don't, I don't believe that there's any jurisdictional claims, I mean, there's any, there's any valid claim when there's—these are all statutory claims or common law jurisdiction. Statutory claims are not always constitutional.

The trial court then attempted to explain *voir dire* to the appellant and asked him whether he had any questions for the venire panel. The appellant replied:

---

Ali. Moorish Science is a heterodox Islamic sect based on teachings of Drew and his "Seven Circle Koran." ... Drew told his followers that they are not U.S. citizens and distributed "Moorish Passports."

\* \* \*

Needless to say, [the defendant's claims] diverted attention from the criminal charges (which may have been his object). Laws of the United States apply to all persons within its borders. Even if James were not a citizen of the United States (though he is, having been born here), he would be obliged to respect the laws of this nation. *Id.* at 954. In the case at bar, with respect to the appellant's argument below that the Maryland courts lacked jurisdiction over him, the following observation by a federal district judge is apt:

Finally, the Court notes that it has considered and rejected Fabiola Is Ra El Bey's argument that the case cannot be remanded because Fabiola Is Ra El Bey is not subject to state court jurisdiction. Fabiola Is Ra El Bey argues that she is a "Sovereign aboriginal/indigenous Moorish American" who "can only submit her jurisdiction to an article III judge who can adjudicate in cases of Diversity." *Id.* Members of the Moorish Science Temple may believe whatever they like about the legitimacy of state courts and state court judgments. However, this Court is not aware of any legal principle which allows a person to immunize herself from state court jurisdiction simply by joining a particular church. If such a principle did exist, it would be utterly contrary to our Constitution, our history, and our legal traditions, which require equal treatment under the law for all people regardless of their religious or ethnic backgrounds.

*Bank of Am. Nat'l Ass'n v. Derisme,* 743 F.Supp.2d 93, 103 (D.Conn. 2010). This jurisdictional argument has been characterized by the Fourth Circuit as "patently frivolous." *United States v. Burris,* 231 Fed.Appx. 281, 282 (4th Cir.2007). *See Pitt–Bey v. District of Columbia,* 942 A.2d 1132, 1135–36 (D.C.2008) (rejecting claim of immunity from prosecution).

[THE APPELLANT]: I do not claim to be a citizen of Maryland. I claim to be a Moorish American, sui juris, in propria persona, and in full life.

THE COURT: Okay.

[THE APPELLANT]: So, I don't—I mean, you would have to get a jury of those kinds of peers for this to be a fair trial.

At that point, the trial court observed that it appeared that the appellant wanted to represent himself. That met with the following responses:

[THE APPELLANT]: I'm still challenging the jurisdiction. So, I don't see any need to represent anything yet because I don't think that the Court has determined jurisdiction nor has the power to determine its own jurisdiction. It only acts—

THE COURT: Do you—

[THE APPELLANT]:—ministerially and not judicially, and that's also in *Boswell v. Otis.*

THE COURT: Do you want a lawyer?

[THE APPELLANT]: I do not want anyone to represent me because I'm in my proper person today.

THE COURT: Okay. So, you do not want me to appoint counsel to represent you, is that correct?

[THE APPELLANT]: I am in my proper person. I do not require any representation.

THE COURT: That's fine, but I just thought I'd ask, because if you want a lawyer—

[PROSECUTOR]: Yes.

THE COURT: I'll get you one. Do you want a lawyer?

[THE APPELLANT]: We went over this.

THE COURT: Okay. Just, I want to be sure. I like to— . . .—I like to be positive.

The trial judge then addressed additional jury selection issues. When he asked the appellant to disclose the names of any potential witnesses for *voir dire* purposes, the appellant returned to his challenge to the court's jurisdiction:

[THE APPELLANT]: I'm still questioning from, based on the laws that I've stated, the Court's power to (unintelligible) based on jurisdiction.

THE COURT: I know that, but if, if—that's fine and you may do that continuously, but if there's anybody who you might ask to testify, I need to know their name now so that I can, in picking a jury, I can just see if anybody knows anybody.

The appellant then reiterated his challenge just before the jury panel entered the courtroom, stating that he could not "see how the Court is proceeding to do anything that has any regards to adjudication because it has not proved jurisdiction yet." When the trial judge asked whether there were any challenges to the venire, the appellant said:

I challenge whether or not these people of the jury actually have knowledge of the status in which that I claim; therefore, you know—and, and based on the fact that if they are claiming to be a part of the corporation of the State of Maryland, then that would be technically a conflict of interest.

The trial judge construed this as an oral motion and denied it.

After the trial judge began a general *voir dire,* and asked the prospective jurors whether any of them were acquainted with the appellant, the appellant said he was present "under protest." When the trial judge remarked: "That's okay, but just—" the appellant responded, "Okay." The appellant actively participated in *voir dire.*[6] When the trial judge asked the

---

6. For example, the trial court suggested that a prospective juror be stricken for cause because he was a police officer:

THE COURT: Okay. Let me also suggest that No. 5, who's a police officer, has said any number of things that would probably suggest to everybody that you don't want him on the jury.
[PROSECUTOR]: Agreed, Your Honor.
THE COURT: Do you agree? I'm helping you.
[THE APPELLANT]: He seems like an interesting officer, but—
THE COURT: He's very interesting, son, but I—
[THE APPELLANT]: He may, he may be, but we can do without him. We can do without him.

venire whether there was "any member of the panel who believes that the State must prove its case beyond all doubt or to an absolute certainty," the appellant asked whether the judge "could repeat that question." The trial judge complied. The trial judge's *voir dire* also touched on the appellant's membership in the Moorish Nation:

> THE COURT: The defendant is a member of an organization called the "Moorish Nation." Is there any member of the panel who knows anything at all about this organization or who's ever heard of it?
>
> [PROSPECTIVE JUROR]: Your Honor, what was the name of it again?
>
> THE COURT: The Moorish Nation, M–O–O–R–I–S–H, separate word, Nation, N–A–T–I–O–N?
>
> [THE APPELLANT]: For the record, it also can be termed as the "Moors," just M–O–O–R–S. You can look that up if you choose.

Following *voir dire,* the appellant again objected that the jurors would not constitute a jury of his peers, but then acknowledged that the trial court already had denied that motion. Just prior to opening statements, the appellant complained that he had not had time to prepare and requested a continuance:

> [THE APPELLANT]: I know you did take note of me, of the motions that I requested, and I, and I do understand that you have denied those motions; but I do—I did not have time to get a fair discovery and to be able to prepare a defense.

---

When another prospective juror was called to the bench for additional questioning, the appellant asked the juror:

> [THE APPELLANT]: Do you feel that based on the fact that the person wasn't actually brought to trial and not brought to justice, that that impairs your judgment at all?
>
> ✻ * *
>
> Oh, for the—oh, for the record, we feel bad for you, but do you think that that—
>
> THE COURT: Thank you, sir. You can step back.
>
> [JUROR NO. 36]: Okay.

Since I'm alleged and being put into the—well, I said, that's not my status—but since I'm being tied to the defendant, I mean, at least, if I'm supposed to be defending that, I would, I would like to request some fair amount of time . . . to actually be able to prepare a case.

There followed a dispute between the appellant and the prosecutor as to whether the District Court had denied an earlier request for a continuance. When the appellant complained that he had not had sufficient time to "prepare a defense or discover the evidence," the trial judge denied his motion to postpone the trial:

THE COURT: Well, respectfully, I'm, I'm going to deny your motion. I have considered all of the factors set forth under the Maryland Rules for criminal cases for continuances, and I would note, in addition, that you participated admirably in jury selection and were thoughtful and well-considered in your comments. And I find, also, that earlier, when the State tendered its discovery to you, you declined, which is your right but you can't use your own lack of diligence as a reason. So, respectfully, your motion is denied.

Opening—

[THE APPELLANT]: So, I can't even get a time to prepare a case?

THE COURT: Sir, and the other thing, respectfully, you can't do is this: You may object, you may state your position, but respectfully, once I've ruled, that's kind of it, and please, please, do not argue with me.

[THE APPELLANT]: Okay. Well, can you note the objection to that?

THE COURT: You may note an objection whenever you want, but you still can't argue with me because it's not helpful.

[THE APPELLANT]: You're right.

THE COURT: Thank you.

■ As the Court of Appeals observed in *Knox v. State*, 404 Md. 76, 945 A.2d 638 (2008):

> The Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, provides that in all criminal prosecutions, the accused shall enjoy the right to be informed of the nature of the charges against him or her and to have the assistance of counsel for a defense. Similarly, Article 21 of the Maryland Declaration of Rights protects these same rights. These constitutional provisions guarantee the right to counsel, including appointed counsel for an indigent, in any criminal case involving incarceration.

*Knox*, 404 Md. at 86–87, 945 A.2d 638 (footnotes and citation omitted). The erroneous deprivation of the right to counsel constitutes structural error. *See United States v. Gonzalez–Lopez*, 548 U.S. 140, 150, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006) (citation omitted). Turning to the policy concerns that animated the promulgation of Rule 4–215, the Court of Appeals in *Knox* recognized:

> As part of the implementation and protection of this fundamental right to counsel, the Court adopted Rule 4–215. *See, e.g., Broadwater v. State*, 401 Md. 175, 180 [931 A.2d 1098] (2007). The Rule "provides an orderly procedure to insure that each criminal defendant appearing before the court be represented by counsel, or, if he is not, that he be advised of his Sixth Amendment constitutional right to the assistance of counsel, as well as his correlative constitutional right to self-representation." *Id.* at 180–81 [931 A.2d 1098] (quotation omitted). Before a court may find that a defendant has waived the right to counsel, the court must be satisfied that the defendant is informed of the risks of self-representation, and of the punishments which may be imposed. The Rule "exists as a 'checklist' that a judge must complete before a defendant's waiver can be considered valid; as such, it mandates strict compliance." *Johnson v. State*, 355 Md. 420, 426 [735 A.2d 1003] (1999). Failure to comply with the Rule constitutes reversible error. *Broad-*

*water,* 401 Md. at 182 [931 A.2d 1098]; *Moten v. State,* 339 Md. 407, 411 [663 A.2d 593] (1995).

The requirements of Rule 4–215 "are mandatory and must be complied with, irrespective of the gravity of the crime charged, the type of plea entered, or the lack of an affirmative showing of prejudice to the accused" because the right to counsel is a fundamental right. *Broadwater,* 401 Md. at 182 [931 A.2d 1098] (quotation omitted). We explained in *Broadwater* as follows:

"As part of the implementation and protection of this fundamental right to counsel, we adopted Maryland Rule 4–215, which explicates the method by which the right to counsel may be waived by those defendants wishing to represent themselves, the modalities by which a trial judge may find that a criminal defendant waived implicitly his or her right to counsel, either by failure or refusal to obtain counsel, and the necessary litany of advisements that must be given to all criminal defendants before any finding of express or implied waiver of the right to be represented by counsel may be valid. The Rule 'provides an orderly procedure to insure that each criminal defendant appearing before the court be represented by counsel, or, if he is not, that he be advised of his Sixth Amendment constitutional right to the assistance of counsel, as well as his correlative constitutional right to self-representation.' Any decision to waive counsel (or to relinquish the right to counsel through inaction) and represent oneself must be accompanied by a waiver inquiry designed "to ensure that [the decision] is 'made with eyes open' and that the defendant has undertaken waiver in a 'knowing and intelligent' fashion."

*Id.* at 180–81 [945 A.2d 638] (internal citations omitted)."

*Knox,* 404 Md. at 87–88, 945 A.2d 638.

The State essentially agrees with the appellant that neither the District Court nor the circuit court adhered to the dictates of Rule 4–215. Nevertheless, it asserts that the appellant's "conduct was so disruptive to the orderly administration of [ ]

Rule 4–215" that neither court "erred in finding that [the appellant] waived counsel, notwithstanding the absence of the advisements required by [the Rule]."

To support its argument that the appellant's disruptive conduct rendered it impossible for the courts below to fully adhere to the "precise rubric" of Rule 4–215, the State relies upon *Leonard v. State*, 302 Md. 111, 486 A.2d 163 (1985). In that case, the defendant appeared for trial and immediately requested a continuance to secure a certain witness. When his request was denied, he sought to discharge his counsel, expressing such dissatisfaction with counsel that he refused to interact with him at all. Leonard was adamant that his attorney not take any action on his behalf.[7] He even attempted to leave the courtroom, without success.

---

**7.** The transcript in *Leonard* reflects the following discussion at the bench:

> COURT: *I understand you want to conduct your own defense.*
> MR. LEONARD: *That's the only choice I got.*
> COURT: *I take it your answer is yes?*
> MR. LEONARD: *It's got to be yes. It's the only choice I have.*
> COURT: *Alright.* I'm going to allow Mr. Krissoff to stay . . .
> MR. LEONARD: *I don't want you to allow him to do nothing. I have a right to do it* (all in one man). (Mr. Leonard's diction is not proper.)
> COURT: Well, fine.
> MR. LEONARD: (?)
> COURT: You have a right to . . . Mr. Leonard, do you want to let me finish?
> MR. LEONARD: You can finish, man. I'm ready to go on with it. I don't want to hear no more you got to say about it.
> COURT: Well, you're going to hear what I have to say. Mr. Krissoff is going to sit at the table. You can consult with him or not as . . .
> MR. LEONARD: I'm not consulting with him . . .
> COURT: That's up to you.
> MR. LEONARD: . . . I'm letting you know now.
> COURT: That's up to you.
> MR. LEONARD: *So don't even put it on the record about he's a legal advisor for me, because he's not.*
> COURT: He's going to . . .
> MR. LEONARD: *He's not no legal advisor for me.*
> COURT: Are you finished?
> MR. LEONARD: Right.

The trial judge refused to appoint new counsel, but ordered that Leonard's attorney act as standby counsel. After being convicted of possession of a controlled dangerous substance with intent to distribute and of conspiracy, Leonard appealed. The Court of Appeals reversed.

Although Leonard had been permitted to represent himself with standby counsel, the Court of Appeals determined that the court's waiver inquiry was inadequate under then Rule 723, which is now Rule 4–215. The Court observed:

> It seems obvious to us that Leonard expressed in clear terms a "desire or inclination" to represent himself, and that his statements should have led the trial court reasonably to conclude that Leonard desired self-representation. . . . In particular, Leonard's affirmative response to the court's inquiry as to whether he wanted to conduct his own defense was, standing alone, sufficient to trigger an inquiry under Rule 723 c to ascertain whether he truly wanted to represent himself. . . .
>
> The State seeks to avoid this conclusion by arguing that Leonard's behavior effectively prevented the trial court from conducting the requisite waiver of counsel inquiry. Under this theory, the State seems to contend that Leonard's behavior foreclosed and excused totally a Rule 723 c waiver inquiry. Although the proposition that a defendant's conduct may in some limited circumstances preclude a Rule 723 c inquiry is correct in the abstract, we are unable to agree with the State that this proposition has any application to these facts. A brief explanation of our rationale will reveal the flaw in the State's argument.
>
> The Maryland Rules governing waiver of counsel recognize that a defendant may waive his right to counsel by conduct. Md. Rule 723 d 2 [now Md. Rule 4–215(c) ]; *see Brown v. State,* 50 Md.App. 651 [441 A.2d 354] (1982)

THE COURT: He's going to sit at the table for you to consult with. If you to avail yourself of him, that's your privilege.

MR. LEONARD: I don't need him. I don't want him there.

*Leonard,* 302 Md. at 116–17, 486 A.2d 163.

(defendants by their actions effectively waived their right to counsel). For example, a defendant may waive his right to counsel, either affirmatively or by neglecting or refusing to obtain counsel. Md. Rules 723 b 7, 723 d. Similarly, a defendant who engages in a pattern of deliberate, obstructionist misconduct may forfeit his right to self-representation. . . .

A related question, and one which the State argues is at issue in this case, is whether a defendant's disruptive conduct can ever rise to such a level to excuse a Rule 723 c inquiry. Our short answer to the State's argument is that circumstances may arise where the defendant is so disruptive during the trial court's attempt to advise him of the dangers and disadvantages of self-representation that the court would be justified in terminating its inquiry. In our view, these circumstances would be rare indeed. When it does occur, however, the record must be indelibly clear that the trial court made reasonable efforts to comply with Rule 723 c. The defendant's disruptive and obstreperous conduct during these efforts must be of a magnitude such as effectively to thwart the court from complying with the Rule or to reduce the proceeding to a mockery. Under all the circumstances, the record must clearly reflect that the trial court made a reasonable effort to inform the defendant of his rights.

*Leonard,* 302 Md. at 125–27, 486 A.2d 163 (citations omitted). The *Leonard* Court concluded that there had been no "reasonable effort by the trial court to engage in a ... waiver inquiry," *id.* at 128, 486 A.2d 163, and that Leonard's conduct was not so disruptive as to excuse the trial court's failure to conduct an adequate waiver inquiry.

A number of cases from other jurisdictions are instructive. In *United States v. Goldberg,* 67 F.3d 1092 (3d Cir.1995), the United States Court of Appeals for the Third Circuit addressed whether the district court had deprived Goldberg of his Sixth Amendment right to counsel. Goldberg was represented by a federal public defender, but before trial filed a *pro se* motion seeking a continuance to obtain new counsel or, in

the alternative, leave to represent himself. The district court, having learned that Goldberg may have had the resources to hire private counsel, advised him that the court would consider a postponement should Goldberg be able to retain an attorney by the trial date. In the meantime, the appointed counsel unsuccessfully sought to withdraw. The trial date arrived and trial commenced. Appointed counsel continued to represent Goldberg during jury selection.

Soon thereafter, appointed counsel informed the court that Goldberg had asked him to renew his motion to withdraw and, when he had refused to do so, had threatened his life. In Goldberg's absence, the district court granted counsel's motion to withdraw. The court's order was personally served on Goldberg that day. Goldberg appeared at trial, accompanied by an attorney who had yet to enter his appearance. Goldberg explained that the new lawyer required a retainer, and asked for a continuance to obtain the necessary funds. Goldberg also told the district court that he "was incapable of trying a criminal case." *Id.* at 1096. The district court denied Goldberg's motion, explaining:

> The Court finds that you have manipulated the judicial system for your own benefit, and the Court will not grant the continuance. The Court finds that by your conduct you have waived the right to proceed with counsel at this trial, and the Court simply will not tolerate that behavior.

*Id.* When Goldberg told the court that he was not "making a valid waiver of my Sixth Amendment," the judge responded:

> No, and I'm not engaging in a colloquy with you with respect to that either. I'm determining that your actions have waived counsel, and that that was a knowing and voluntarily intentional act.

*Id.* The district court issued a written opinion memorializing its ruling, *United States v. Goldberg,* 855 F.Supp. 725 (M.D.Pa. 1994). Goldberg proceeded *pro se,* and was convicted.

On appeal, Goldberg argued that the district court had failed to engage in a proper waiver inquiry and that his conduct had not amounted to a waiver or forfeiture of the

right to counsel. The government agreed that the district court had failed to conduct an adequate waiver inquiry but maintained that Goldberg's deliberately abusive conduct had resulted in a "waiver" of his right to counsel.

The United States Court of Appeals for the Third Circuit reversed. It explained the district court's ruling as follows:

> The district court issued an opinion explaining why it had required Goldberg to proceed pro se. *United States v. Goldberg,* 855 F.Supp. 725, 727 (M.D.Pa.1994). It quoted at length from its prior decision, *United States v. Jennings,* 855 F.Supp. 1427, 1441–43 (M.D.Pa.1994), *aff'd* 61 F.3d 897 (3d Cir.1995) (table), where it had found that the defendant had waived his right to counsel by punching his court-appointed attorney. The district court also concluded that Goldberg had not demonstrated good cause for his application on May 27, 1994, to substitute counsel. *Goldberg,* 855 F.Supp. at 730–32. Turning to its decision requiring Goldberg to represent himself, the district court relied on its *Jennings* decision. It explained that threatening one's attorney with physical violence like the actual use of force is tantamount to a "waiver" of the right to counsel. The district court further held that its decision to relieve [appointed counsel] was "in furtherance of the orderly and effective administration of justice," and that the decision was proper where Goldberg was "manipulating the right to counsel in order to delay and disrupt his trial." *Id.* at 732, 733.

*Id.* at 1096–97.

In rejecting the government's argument on appeal, the court first explained the distinction between a "waiver," which is an intentional and voluntary relinquishment of a known right, and a "forfeiture," which is conduct that "results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right." *Id.* at 1099–1100. Surveying opinions that had confused the two terms, the court concluded that, to apply waiver, the defendant at least must have been informed of the

nature of his rights, as "there can be no valid waiver of the Sixth Amendment right to counsel unless the defendant also receives *Faretta* [*v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) ] warnings."[8] *Id.* In the final analysis, the court concluded that, "[e]ven if [it] were to accept a forfeiture argument, which as we have noted requires extremely serious misconduct, the facts of this case would not support such a result." *Id.* at 1102.

In *United States v. McLeod*, 53 F.3d 322 (11th Cir.1995), the defendant was represented by counsel, was convicted, and then moved for a new trial. His lawyer moved to withdraw his appearance prior to the hearing on the new trial motion. At the hearing on the lawyer's motion to withdraw, the defendant threatened the lawyer with harm and with lawsuits. The district court ruled that, by this misbehavior, the defendant had forfeited his right to be represented by counsel.

On appeal, the United States Court of Appeals for the Eleventh Circuit rejected the defendant's argument that he had been denied his constitutional right to counsel. The court reasoned as follows:

> McLeod's behavior toward his counsel was repeatedly abusive, threatening, and coercive. Although we are troubled by the fact that McLeod was not warned that his misbehavior might lead to *pro se* representation, the court gave McLeod the opportunity to testify at the hearing held on [the attorney's] motion to withdraw. McLeod, however, refused to take an oath, and the judge accordingly did not allow him to testify.

> Following McLeod's refusal to take an oath, the judge granted [the attorney's] motion to withdraw. The judge again asked McLeod whether he objected to [the attorney's] withdrawal. At this point, McLeod asked that another attorney be appointed to represent him.

---

8. The court also described a "hybrid situation," "waiver by conduct," in which the defendant is warned about the consequences of his conduct, including the risks of proceeding without representation, but persists in any event. *Goldberg,* 67 F.3d at 1100–01.

We are mindful of McLeod's request for a third attorney. In light of McLeod's behavior, however, we cannot say that the district judge erred by concluding that McLeod had forfeited his right to counsel.

53 F.3d at 326 (footnotes omitted).

In *State v. Boykin*, 324 S.C. 552, 478 S.E.2d 689 (App.1996), Boykin threatened and verbally abused his court-appointed counsel one time when the attorney visited him in jail. After conducting a hearing, the trial court allowed the attorney to withdraw based on that episode, and refused to appoint substitute counsel. Boykin, proceeding *pro se*, was convicted of armed robbery. He appealed, arguing that the trial court had erred in allowing his appointed counsel to withdraw without appointing replacement counsel.

The South Carolina Court of Appeals reversed. It reviewed in detail the three common scenarios in which a defendant may relinquish his or her right to counsel:

First, a defendant may waive his Sixth Amendment right to counsel. A waiver is an intentional and voluntary relinquishment of a known right. The most common method of waiving a right is by an affirmative, verbal request. The Supreme Court has held that a waiver of the right to counsel must be knowing, voluntary, and intelligent. The defendant must be informed on the record of the dangers and disadvantages of self-representation, or the record must indicate the defendant had sufficient background to understand the disadvantages of self-representation before he waives his right to counsel.

A defendant may also waive his right to counsel through his conduct. Once a defendant has been warned that his misconduct will thereafter be treated as a waiver of his right to counsel, any subsequent misconduct is treated as a "waiver by conduct." Most courts have held there can be no "waiver by conduct" unless the defendant is first warned of the consequences of his actions....

Finally, some courts have held a defendant may forfeit his Sixth Amendment right to counsel. Forfeiture results in

the loss of the right regardless of the defendant's knowledge of either the consequences of his actions or the dangers of self-representation. "Because of the drastic nature of the sanction, forfeiture would appear to require extremely dilatory conduct. On the other hand, a 'waiver by conduct' could be based on conduct less severe than that sufficient to warrant a forfeiture." While a number of courts have recognized the existence of forfeiture of right to counsel, only two courts have held a defendant's conduct serious enough to warrant a forfeiture, particularly in the absence of any prior warning by the court.

478 S.E.2d at 690–91 (citations omitted).

The court then concluded that the trial court's ruling could not be upheld:

In the present case, the record shows Boykin was not warned of the consequences of his actions, nor of the dangers inherent in self-representation. Because waiver implies the intentional relinquishment of a known right, Boykin could not have waived his right to counsel, either expressly or by his conduct. The issue, then, is whether this state will recognize forfeiture of the right to counsel and whether Boykin's actions were so severe as to constitute a forfeiture.

Although we do not condone Boykin's actions, we do not believe they were so severe as to permanently deprive him of appointed counsel. Both cases which have held a defendant forfeited his right to counsel involved a course of conduct more egregious than the single incident alleged here. Accordingly, we need not decide whether South Carolina should embrace the doctrine of forfeiture because we find that Boykin's conduct in the one event related by [his counsel] was not sufficient to constitute forfeiture.

*Id.* at 692.

In *Commonwealth v. Means*, 454 Mass. 81, 907 N.E.2d 646 (2009), the defendant sent a threatening letter to his appointed counsel demanding that the attorney withdraw from representation. He also filed a flurry of *pro se* pretrial motions,

including one seeking the appointment of new counsel. In support of that motion, he included an affidavit attesting that he had sent threatening correspondence to his attorney and further attesting that he intended to harm his attorney if the court did not grant his motion.[9] The trial judge conducted a video hearing on the motion, during which he asked the defendant to confirm that he indeed had sent a threatening letter. Finding that the defendant had "lost [his] right to court appointed counsel," the judge ordered him to represent himself and appointed standby counsel. 907 N.E.2d at 654. In a memorandum opinion, the judge further explained that "the defendant here engaged in egregious misconduct by threatening [appointed counsel] and his family with serious bodily harm and even death. As such, he has forfeited his right to proceed to trial with [appointed counsel] or any other court-appointed attorney...." The trial judge refused to reconsider her ruling. *Id.* at 654, 655.

On appeal, the Massachusetts Appeals Court affirmed, but the Supreme Judicial Court reversed, granting the defendant a new trial. The defendant raised two issues on appeal:

> First, he claims that the doctrine of forfeiture may not be applied to deprive him of his constitutional right to assistance of counsel at trial. Second, he asserts that, even if forfeiture is recognized, his conduct was not sufficiently egregious to warrant its application to him.

*Id.* at 655 (footnote omitted). The court set forth three of the most common ways in which a criminal defendant may forego his right to counsel:

---

**9.** The defendant represented
that, if the judge did not allow his motion, then at the "very first chance," the defendant "will physically assault, spit, kick, head-butt, etc." appointed counsel. To emphasize his point, the defendant added that he was "not playing around; this isn't any joke, I'm very serious! I have major mental health deficiencies, and present very serious anger management issues, due to lack of treatment." The defendant concluded his affidavit by noting that he was "not prepared" for his April 27 trial date, and did not have any documents with which to present his defense.
907 N.E.2d at 653.

Criminal defendants may voluntarily, and in certain circumstances involuntarily, proceed without a lawyer. Among the means by which criminal defendants may forgo their right to assistance of counsel are waiver, waiver by conduct, and forfeiture....

*Id.* at 656. The court's discussion of forfeiture is most pertinent:

Forfeiture of the constitutional right to counsel results in the defendant's being required to represent himself even though he may wish to be represented by counsel and even though he has not been warned of the dangers of proceeding on his own. See [*United States v. Goldberg*] at 1100 ("Unlike waiver, which requires a knowing and intentional relinquishment of a known right, forfeiture results in the loss of a right regardless of the defendant's knowledge thereof, and irrespective of whether the defendant intended to relinquish the right"). Forfeiture is an extreme sanction in response to extreme conduct that imperils the integrity or safety of court proceedings. *See, e.g., United States v. Leggett,* 162 F.3d 237 (3d Cir.1998) (criminal defendant who physically assaulted counsel held to forfeit right to counsel).

*Id.* at 658. The court added:

We have previously emphasized the "power of the judiciary to control its own proceedings, the conduct of participants, the actions of officers of the court and the environment of the court," which is a power "absolutely necessary for a court to function effectively and do its job of administering justice." ... "[T]rial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case." *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). Forfeiture is a method of courtroom management in extraordinary circumstances. The sanction of forfeiture recognizes that a defendant may engage in misconduct that is so serious that it may justify the loss of his right to counsel even if he was not warned that his misconduct may have that consequence. Mindful that violence by defendants can and does occur in the court room,

and taking into account considerations of the fair, efficient, and orderly administration of justice, we are not prepared to deprive judges of what may be a necessary response to exigent circumstances.

*Id.* at 658–59 (footnote omitted). Surveying decisions from sister jurisdictions, the court then set forth the circumstances in which forfeiture of the right to counsel may apply:

First, forfeiture of counsel typically is applied in circumstances where a criminal defendant has had more than one appointed counsel, perhaps because in those circumstances the means of proceeding with counsel have been exhausted or found futile.

\*　　\*　　\*

Second, forfeiture rarely is applied to deny a defendant representation during trial. It is more commonly invoked at other stages of a criminal matter, such as a motion for a new trial, sentencing, appeal, and pretrial proceedings.

\*　　\*　　\*

Third, forfeiture may be an appropriate response to the defendant's threats of violence or acts of violence against defense counsel or others.

\*　　\*　　\*

The fourth and final area of general agreement we discern is that forfeiture should be a last resort in response to the most grave and deliberate misconduct.

*Id.* at 659–60 (citations and footnotes omitted). The court concluded that forfeiture of counsel should seldom occur:

Because the consequences of forfeiture of counsel are so severe, the sanction of forfeiture should not be imposed until the defendant has had a full and fair opportunity at a hearing to offer evidence as to the totality of circumstances that may bear on the question whether the sanction of forfeiture is both warranted and appropriate.

*Id.*, 907 N.E.2d at 662. Because the defendant had not been afforded that opportunity, the court reversed.

In *State v. Holmes*, 302 S.W.3d 831, 833 (Tenn.2010), the Supreme Court of Tennessee addressed the question whether the "trial court erred in ruling that an indigent defendant forfeited his right to counsel at trial by telling his appointed lawyer, 'I know how to get rid of you,' and, at a subsequent meeting, physically assaulting [counsel]." After surveying the leading cases on the issue, the court held that such conduct did not rise to the level of "extremely serious misconduct" that would warrant a forfeiture of the right to counsel:

> Though the individual facts vary widely, these cases make clear that a criminal defendant's constitutional right to the assistance of counsel is so fundamental, particularly at trial, that only the most egregious misbehavior will support a forfeiture of that right without warning and an opportunity to conform his or her conduct to an appropriate standard.

302 S.W.3d at 846 (footnote omitted).

■ We return to the case at bar. On the record before us, the *Leonard* holding that in rare circumstances a defendant's conduct may excuse the circuit court from making the necessary advisements under Rule 4–215 provides no comfort to the State. The appellant's conduct in this case was not disruptive and obstreperous. To be sure, he repeatedly raised his completely non-meritorious jurisdictional argument, even after the court had ruled against him on it. Although the trial judge was frustrated by the appellant's one-track argument, he was able to control his courtroom, and there was no risk of danger or harm to anyone. The appellant, while persistent in his challenges to the State's authority to prosecute him, was not intransigent and, as noted above, acknowledged the trial judge's warning not to become argumentative if the court ruled against him on any particular matter. In short, the appellant's behavior, while annoying, did not "thwart the court from complying with [Rule 4–215] or reduce the proceeding to a mockery," *Leonard*, 302 Md. at 127, 486 A.2d 163, and therefore did not excuse the court from giving the information required by that Rule.

The appellant was not given the advisement required by Rule 4–215 and could not waive his right to counsel, as any waiver would not have been knowing. The appellant's conduct was not such as to thwart the court in giving the required advisements. Finally, the appellant's conduct was not egregious and extremely serious misconduct that would amount to a forfeiture of the right to counsel.

**JUDGMENTS OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS. COSTS TO BE PAID BY MONTGOMERY COUNTY.**