REPORTED
IN THE COURT OF SPECIAL APPEALS

No. 2525

September Term, 2012

NATHANIEL ADEL STEWART-BEY

v.

STATE OF MARYLAND

Berger,
Arthur,
Kenney, James A., III
        (Retired, Specially Assigned),

JJ.

Opinion by Berger, J.

Filed:  July 31, 2014

Following a jury trial, appellant Nathaniel Adel Stewart-Bey ("Stewart-Bey") was convicted of thirty-two counts of criminal conduct involving counterfeiting checks, issuing counterfeit instruments, theft, and attempted theft by the Circuit Court for Charles County.[1] Prior to trial, Stewart-Bey was referred for multiple competency evaluations and the circuit court ruled, on two separate occasions, that Stewart-Bey was competent to stand trial. The circuit court also determined that Stewart-Bey knowingly and voluntarily waived his right to counsel. At trial, Stewart-Bey represented himself.

On appeal, Stewart-Bey presents four issues for our review, which we have rephrased slightly as follows:

> I. Whether the circuit court erred when it determined that Stewart-Bey was competent to stand trial.
>
> II. Whether the circuit court erred when it determined that Stewart-Bey was competent to discharge counsel.
>
> III. Whether the circuit court erred by overruling Stewart-Bey's objection to the State's opening statement.
>
> IV. Whether the circuit court erred by failing to merge Stewart-Bey's convictions for counterfeiting and issuing counterfeit instruments with his convictions for theft and attempted theft.

For the reasons discussed below, we answer Questions I through III in the negative. We answer Question IV in the affirmative and hold that certain counts must merge for

---

[1] Stewart-Bey was charged with a total of thirty-six counts. The State nol prossed four counts at the conclusion of its case. The jury found Stewart-Bey guilty of the remaining thirty-two counts.

sentencing purposes. Accordingly, we shall vacate certain sentences as discussed in Part V.

We shall otherwise affirm the judgments of the Circuit Court for Charles County.

## FACTS AND PROCEEDINGS

The State adduced the following evidence at trial. On several instances, Stewart-Bey

purchased or attempted to purchase goods using counterfeit checks at two different stores,

Sam's West, Inc. (hereinafter "Sam's Club") and Lowe's Home Centers, Inc. (hereinafter

"Lowe's"). The purchases and attempted purchases occurred between November 15 and

November 27, 2009.

### *Events at Sam's Club*

Stewart-Bey purchased or attempted to purchase goods at Sam's Club using

counterfeit checks on November 15, 16, 17, and 27, 2009. On November 15, 2009,

Stewart-Bey attempted to purchase cigarettes in an "amount [that] exceeded or was close to

$10,000." Joseph Barbour ("Barbour"), the general manager of Sam's Club at the time of

the incidents, testified that he did not currently have access to the journals indicating the

exact dollar amount of the items Stewart-Bey attempted to purchase. The sale was declined

because the amount of the sale exceeded the store's purchase limit for non-wholesale

cigarette purchases. Stewart-Bey did not attempt to make other purchases that day.

On the following day, Stewart-Bey returned to Sam's Club and again attempted to

purchase cigarettes. The sale was divided into two separate transactions, for which Stewart-

2

Bey presented two checks, one for $5,697.03 and one for $2,680.96, totaling $8,377.99. The transaction was completed and Stewart-Bey left the store with the cigarettes.

On November 17, 2009, Stewart-Bey returned to Sam's Club and attempted to make another purchase. Stewart-Bey attempted to purchase electronics equipment, a flat screen television, computer printers, and "maybe a few other smaller items." The supervisor and manager on duty determined that the purchase amount exceeded the limit for a new Sam's Club member. After being informed that the purchase would not be allowed, Stewart-Bey retrieved his identification and exited the building. The transaction was not completed.

Stewart-Bey returned to Sam's Club again on November 27, 2009. By this point, managers were "on alert" because they had been informed that the "checks that [they had] already received . . . were fraudulent." When Stewart-Bey entered the store, the loss prevention supervisor manager was alerted. Stewart-Bey attempted to purchase $8,442.96 worth of cigarettes with a counterfeit check, which was later recovered by Officer John Riffle. The police were called and Stewart-Bey was arrested.

Barbour testified that he "very clearly recall[ed] the checks" presented by Stewart-Bey due to their unusual characteristics. Specifically, Barbour explained that the checks included a "reference to Timothy Geithner or United States Treasurers; United States Treasurer." The checks included the term "United States," but "United States" was not properly capitalized. Barbour further explained that he noticed that the routing number was fewer digits than a current routing number.

*Events at Lowe's*

Stewart-Bey submitted counterfeit checks to Lowe's on November 12, 13, 19, 21, and 22, 2009. Jeremiah Porter, a Lowe's employee who worked as a department manager as well as in loss prevention, testified on behalf of his employer. Mr. Porter explained that on November 12, 2009, Stewart-Bey opened a "LAR" account at Lowe's.[2] Stewart-Bey presented a check made out in the amount of $9,357.62 for deposit into the LAR account. After depositing funds into the LAR account, Stewart-Bey placed an order for various merchandise, including a covered trailer, fish tape, cable, a staple gun, insulated staples, and other home improvement supplies. The total value of the items ordered on November 12, 2009 was $9,357.62. Some items from the order were picked up on November 16, 2009.[3]

On November 13, 2009, Stewart-Bey returned to Lowe's and attempted to deposit a second check into the LAR account. Stewart-Bey presented a check in the amount of $6,519.74 and the store added $6,519.74 to Stewart-Bey's LAR account balance.

On November 19, 2009, Stewart-Bey again returned to Lowe's. He presented a check in the amount of $9,700, which was received by Lowe's. The store added $9,700 to Stewart-Bey's LAR account balance.

---

[2] A LAR account is an account used by construction companies, contractors, and other customers who buy in bulk. A customer deposits money into the LAR account and subsequently can come into the store and purchase items using funds in the LAR account.

[3] The evidence does not reflect which items were actually picked up on November 16, 2009.

On November 21, 2009, Stewart-Bey presented a fourth check, made out in the amount of $9,500.00, to Lowe's for deposit into the LAR account. The store added $9,500 to Stewart-Bey's LAR account balance.

On November 22, 2009, Stewart-Bey returned to Lowe's again. He presented a fifth check, made out in the amount of $9,500.00, for deposit into the LAR account. The store added $9,500.00 to Stewart-Bey's LAR account balance.

*Stewart-Bey's Arrest*

On November 27, 2009, after Sam's Club employees contacted the police, Officer John Riffle of the Charles County Sheriff's Office arrested Stewart-Bey at Sam's Club. Stewart-Bey told Officer Riffle that there was a large amount of money that he wanted the officer to retrieve out of his glove-box. Officer Riffle and Stewart-Bey went to Stewart-Bey's car and Stewart-Bey showed Officer Riffle which key to use to unlock the door. Officer Riffle opened the passenger side door of Stewart-Bey's car and retrieved approximately $4,000.00 from the glove-box. Officer Riffle took the money along with Stewart-Bey to the detention center.

When Officer Riffle opened the car at Stewart-Bey's request, he observed "a lot of other items, receipts from other businesses, gift cards, other checks and a electronic device." Officer Riffle thought the electronic device might be "a skimming device."[4] Officer Riffle

---

[4] A "skimming device" is "a scanner, skimmer, reader, or any other electronic device that is used to access, read, scan, obtain, memorize, or store, temporarily or permanently,
(continued...)

5

contacted Detective Terrell Hemsley, who had the car towed to a secure police lot. Detective Hemsley obtained a search warrant for the vehicle and subsequently searched it on December 2, 2009. The search recovered several counterfeit checks, some of which were partially made out to certain businesses and some of which were blank.

Stewart-Bey was charged with thirty-six counts of criminal conduct involving counterfeiting checks, issuing counterfeit instruments, theft, and attempted theft. The State nol prossed four counts at the conclusion of its case. The jury found Stewart-Bey guilty of the remaining thirty-two counts. Stewart-Bey was sentenced to a total of sixty years' imprisonment. This appeal followed.

Additional facts shall be set forth as necessitated by our discussion of the issues.

**DISCUSSION**

**I.**

This case involves a defendant who utilized a defense colloquially referred to as the "flesh and blood" defense, which is based upon an assertion that the courts lack jurisdiction over a defendant. *See* James Erickson Evans, *The "Flesh and Blood" Defense*, 53 Wm. & Mary L. Rev. 1361, 1365-74 (2012). Generally, individuals invoking the "flesh and blood"

---

[4] (...continued)
personal identifying information or a payment device number encoded on the magnetic strip or stripe of a credit card." Md. Code (2002, 2012 Repl. Vol.), § 8-301(a)(7) of the Criminal Law Article ("CL"). The definition of "skimming device" was renumbered at CL § 8-301(a)(7) effective October 1, 2014. *See* 2014 Md. Laws ch. 237. The object in Stewart-Bey's vehicle was later determined to not be a skimming device.

defense claim that they are "sovereign citizens," which they distinguish from "federal citizens" or "corporate citizens" under the Fourteenth Amendment. *Id.* at 1371. Such defendants claim that "American citizenship granted by the Fourteenth Amendment is a ploy by corporations to financially enslave the masses and destroy the republican union." *Id.* (internal quotation and citation omitted). "Flesh and blood" defendants "theorize that this citizenship is grounded in a contract between each citizen and the federal government - a contract that may be cancelled by renouncing citizenship."[5] *Id.*

In proceedings before the trial court, Stewart-Bey conducted himself in a manner characteristic of the "flesh and blood" defense. When the court attempted to ask Stewart-Bey whether he wanted a jury or court trial, Stewart-Bey asked the court if it was "attempting to force [him] into some type of commercial contract, against [his] will." Throughout the proceedings, Stewart-Bey repeatedly stated that he was "not accepting any benefits from this [c]ourt" and emphasized that he "reserve[d] [his] rights . . . not to be forced or compelled into any type of agreement that I did not knowingly, willingly, or voluntarily enter into." Stewart-Bey stated that he did "not consent to this hearing" and repeatedly said, in the third person, "Mr. Stewart doesn't understand the proceedings" and further stated, "I do not understand

---

[5] We encountered this defense strategy in *Gutloff v. State*, 207 Md. App. 176, 204 (2012), in which we held that the circuit court was not excused from compliance with Maryland Rule 4-215 when a defendant "repeatedly raised his completely non-meritorious jurisdictional argument, even after the court had ruled against him on it." In *Gutloff*, we noted that the "flesh and blood" defense strategy had "been characterized by the [United States Court of Appeals for the] Fourth Circuit as 'patently frivolous.'" *Id.* at 186 n. 5 (quoting *United States v. Burris*, 231 Fed. App'x 281, 282 (4th Cir. 2007)).

7

the charges." Stewart-Bey explicitly challenged the court's jurisdiction, stating the following:

> Also, for and on the record, let the Court take judicial notice of the fact that I am not here in reference to this trial. I'm here in reference to challenging subject matter jurisdiction, as I indicated previously. Because I am here by way of special visitation and/or special appearance, and not by a gentle [sic] appearance.
>
> Ma'am, your offer of contract for subject matter jurisdiction is hereby rejected and returned to you in full accord with the truth in lending. You are order to proof up, prove up your claim and produce and release the bond to me. Or cease and desist in all of your actions under the color of law.

Stewart-Bey referred to himself as "a free sovereign living flesh and blood inhabitant on the land and undiminished capacity" and argued that the case against him should be "dismissed with prejudice for lack of jurisdiction." Stewart-Bey made similar such references throughout the proceedings.

Stewart-Bey also refused to receive various documents handed to him by the State or by the court. Stewart-Bey refused to take a copy of his indictment, a copy of an order to participate in a competency evaluation, and a copy of the State's proposed voir dire questions, asserting that he did "not receive[] any benefits from the State." Stewart-Bey also declined to dress in civilian clothing, which were provided to him by a correctional officer, explaining that he "d[id] not accept benefits from this [c]ourt or any other - agency of government." Instead, Stewart-Bey remained dressed in prison attire throughout the trial.

8

Throughout the trial, Stewart-Bey's behavior was consistent with the "flesh and blood" defense strategy.

## II.

Having set forth the background regarding Stewart-Bey's defense strategy and conduct before the trial court, we turn to his first contention on appeal. Stewart-Bey asserts that the circuit court erred by failing to make a proper determination of his competency to stand trial.

The issue of Stewart-Bey's competency was first raised at his initial appearance on June 22, 2012. When defense counsel announced that he was appearing on behalf of Stewart-Bey, Stewart-Bey objected, saying, "I have not appointed counsel or requested counsel . . . . I object to anybody standing beside me claiming to be my counsel . . . ." Defense counsel entered the appearance of the Public Defender's Office, and stated, "We'll raise competency." Stewart-Bey replied, "Objection," and said following: "[The defense attorney] is not going to represent me. In fact, you're fired." Because the issue of competency was raised, the circuit court explained that it would order a competency evaluation. The court also advised Stewart-Bey of the thirty-six charges against him and the maximum penalty for each charge. A hearing was scheduled for August 6, 2012.

At the August 6, 2012 hearing, the circuit court considered the issues of Stewart-Bey's competency as well as his request to waive counsel. The State called licensed psychologist Dr. Andrew Good as a witness. The court accepted Dr. Good as an expert in forensic

9

psychology. Dr. Good testified that because Stewart-Bey "was unwilling to participate in the competency . . . evaluation[,]" he "couldn't actually provide an opinion with regard to [Stewart-Bey's] competence to stand trial." Dr. Good continued:

> What I can say is that [Stewart-Bey] does have a history of criminal involvement, thereby him having prior courtroom experiences, and he is familiar with the courtroom process.

> What I did note was that there was a, an absence of any overt symptoms of mental illness. And also, while he was at the Charles County Detention Center there w[ere] no records of him as presenting with any mental health issues, or need for mental health services. And there also was not any documentation noted in the transfer, the brief transfer report that I saw from the D.C. jail.

> * * *

> Essentially, I didn't see anything that indicated the presence of a mental illness. And there was no documentation to support the presence of a mental illness.

> * * *

> [A]s such, I could not provide [Stewart-Bey] with a psychiatric diagnosis.

> * * *

> And because I could not comment on his competence to stand trail, I also could not comment on dangerousness, if in fact he was incompetent to stand trial.

Based upon Dr. Good's testimony, the court found "there is no evidence that Mr. Stewart[-Bey] suffers from any mental illness." The court further found that Stewart-Bey was competent. The court provided Stewart-Bey with a copy of the indictment and, for a

10

second time, explained the thirty-six charges against him and the maximum penalties for each. As we shall discuss in further detail *infra*, Stewart-Bey was permitted to discharge his counsel.

On September 5, 2012, Stewart-Bey appeared in court for his scheduled jury trial, without counsel. The court informed Stewart-Bey that it was planning to "go forward with [the] jury trial today." The court explained the jury trial process and reasonable doubt standard to Stewart-Bey, and explained the difference between a jury trial and court trial. The court asked Stewart-Bey, "So do you wish to go forward with a jury trial or with a judge trial today, sir?" Stewart-Bey responded that he "object[ed] to the proceedings proceeding in any way, first and foremost." Stewart-Bey refused to choose between a jury trial or court trial, expressing that he was "not asking for any benefits from this [c]ourt." Stewart-Bey said, "I do not understand the charges or the nature of this proceeding" and "I do not understand the charges." The court again provided Stewart-Bey with a copy of the indictment. The court read the statement of probable cause aloud and explained to Stewart-Bey, "That is what is alleged. Do you understand that, sir?" Stewart-Bey responded, "I do not understand because I reserved all my rights under U.C.C. 1-308." The circuit court again ordered that Stewart-Bey be evaluated by the Department of Health and Mental Hygiene "to determine whether [Stewart-Bey was] competent to proceed to trial. Whether [Stewart-Bey was] able to understand the nature of the proceedings against [him], and participate in [his]

11

own defense." The court explicitly explained to Stewart-Bey that it was ordering him to participate in the competency evaluation.

An additional competency hearing was held on September 24, 2012. The circuit court provided an outline of the steps that had already been taken in an attempt to determine whether Stewart-Bey was competent to stand trial. The court referred to a report prepared by Dr. Teresa Grant on July 3, 2012.[6] Dr. Grant wrote:

> On June 26, 2012, I received an order requesting that [Stewart-Bey] participate in a competency examination, with a report generated to the court within 30 days.
>
> On June 29, 2012, I reported to the detention center to commence the evaluation. Correctional officers escorted [Stewart-Bey] to the evaluation room. I introduced myself and explained the purpose the evaluation. However, [Stewart-Bey] refused to participate in the evaluation as "I don't allow third party entities to intervene in my commercial affairs." He also verbalized that he is representing himself via "*sui jurist*." Mr. Stewart-Bey identified himself as an indigenous moar [sic]. In the evaluator's experience, [Stewart-Bey] is subscribing to a rigid thought process based upon a system of learned beliefs regarding the criminal justice system, held by many African-American men. His belief system is an eccentric way of perceiving his rights and the criminal justice system, albeit not highly favored.
>
> I will await further instructions from the court. Please feel free to contact me, if you have any questions or concerns regarding this matter.

---

[6] Apparently, this report was prepared prior to the August 6 competency hearing. The court, however, made no mention of Dr. Grant's report at the August 6 hearing and first referred to Dr. Grant's report at the September 24 hearing.

12

A subsequent competency evaluation order was generated on July 6, 2012, which

resulted in the creation of Dr. Good's report on August 2, 2012.[7] The court read from Dr.

Good's report as follows:

> Believing that [Stewart-Bey] did not demonstrate any symptoms to suggest the presence of a mental illness. And there was no available documentation that supported the presence of a mental illness. [Stewart-Bey's] refusal to cooperate in the evaluation was considered to be a product of choice, rather than a function of mental illness.
>
> And noted that [Stewart-Bey] is charged with several felonies that could result in lengthy incarcerations. He has a history of being found guilty of four offenses in the State of Maryland. CDS, unlawful possession, 7/12/90; manufacture, distribute, possess with intent to distribute, August 31, 1990; personation of uniform, July 5, 1984; and robbery, April 29, 2004, according to the Maryland Judiciary case search website. He's also currently on parole for robbery with a deadly weapon in Washington, D.C., in a[n] offense that occurred 2002, according to [the prosecutor]. These offenses indicate that [Stewart-Bey] had prior courtroom experience and was familiar with the court process.
>
> The challenge presented by [Stewart-Bey] is his unwillingness to cooperate with the pretrial competency to stand trial evaluation. His refusal was volitional and consistent with his approach to the pretrial evaluation attempted on June 29, 2012, by Teresa Grant, Ph. D. As well as the risk assessment unsuccessfully attempted on July 12, 2012, by a mental health staff member at the Charles County Detention Center.
>
> [Stewart-Bey] was not known to suffer from a mental illness. Has not received any mental health treatment since his

---

[7] Although Dr. Good testified at the August 6 hearing, the court did not address Dr. Good's report and the content therein at the August 6 hearing.

incarceration at the Charles County Detention Center, nor been referred, even for a mental health evaluation, at the detention center. Further, the documentation available indicates that there was no mention of mental health issues at the time of his transfer from [the] Washington, D.C. jail.

Further, [Stewart-Bey] is able to effectively manage himself in the general population section of the Charles County Detention Center. Based upon the information available at the time of this report, [Stewart-Bey] did not present with any history of mental illness, current mental health symptoms, or evidence to suggest that he is incompetent to stand trial.

The court further noted that a third competency evaluation order was issued on September 10, 2012, which specifically ordered Stewart-Bey to cooperate and participate in the evaluation. The court received a report on September 10, 2012 from Dr. Grant. The court read from Dr. Grant's September 10 report as follows:

On September 10, 2012, I received an order requesting that [Stewart-Bey] participate in a competency examination with a report generated [to] the [c]ourt within 30 days.

On September 14th I reported to the detention center to commence the evaluation. Correctional officers escorted [Stewart-Bey] to the evaluation room; however, he refused to enter the room.

I introduced myself and explained the purpose of the evaluation. [Stewart-Bey] verbalized that he was not provided with an official copy of the order by the court. He also conveyed that he was unaware that an evaluation had been ordered. The evaluator offered [Stewart-Bey] a copy of the order, and explained to him that it was noted in bold letters that he cooperate and participate in the examination. [Stewart-Bey] was offered a copy of the order, in which he declined to accept. He informed the evaluator that he refused to participate, and asked the correctional officer to escort him back to his cell.

14

The court heard argument from the parties on the issue of Stewart-Bey's competency. The prosecutor argued that Stewart-Bey was "being stubborn and refusing to cooperate" and that his behavior in refusing to participate in three separate competency evaluations was "just obstinacy." The prosecutor asserted that Stewart-Bey "clearly d[id] have the ability to understand the proceedings." Stewart-Bey explained that he did not participate in the third evaluation with Dr. Grant because he had "a slight conflict" with Dr. Grant. Stewart-Bey further claimed that Dr. Grant was "not professional" and acted "in a hostile manner." Stewart-Bey maintained that he refused to participate in the competency evaluation when he "recognized that it was [Dr. Grant]."

The court found Stewart-Bey competent to stand trial, ruling as follows:

> Okay. I do find that Mr. Stewart, or also known as Mr. Stewart-Bey's refusal to participate and cooperate with the court ordered evaluations, is his obstinance. I do find, based on the record before me, that he is competent to stand trial, beyond a reasonable doubt. I do find that Mr. Stewart, also known as Mr. Stewart-Bey, is able to understand the nature, object of the proceedings, and to assist in his defense or, having waived his right, freely, voluntarily, and knowingly, to counsel, to represent himself.

After making its competency finding, the circuit court again advised Stewart-Bey of the thirty-six charges against him and the maximum penalties for each.

On appeal, Stewart-Bey contends that the circuit court's August 6, 2012 competency finding was clearly erroneous because the record before the trial court did not contain sufficient evidence to determine whether Stewart-Bey was competent. Stewart-Bey further

15

asserts that his statements to the trial court suggested that he did not understand the nature of the proceedings and that the circuit court erred by failing to make its competency finding beyond a reasonable doubt. Regarding the September 24, 2012 competency finding, Stewart-Bey acknowledges that the record included additional information from which the court could make a competency determination. Stewart-Bey alleges, however, that the circuit court erred by failing to make the competency finding beyond a reasonable doubt.

We review a circuit court's competency determination for clear error. *Peaks v. State*, 419 Md. 239, 252 (2011) (internal quotation and citation omitted). The Court of Appeals set forth the requirements of Maryland law regarding competency as follows:

> A defendant is considered incompetent to stand trial if he or she is not able, "(1) to understand the nature or object of the proceeding; or (2) to assist in one's defense." Md. Code (2001, 2008 Repl. Vol.), § 3-101(f) of the Criminal Procedure Article; *see also Thanos v. State*, 330 Md. 77, 85, 622 A.2d 727, 730 (1993) (quoting *Dusky v. United States*, 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed.2d 824 (1960)). Additionally, the substantive prohibition against the criminal prosecution of an incompetent defendant is protected by certain guarantees of procedural due process. *Trimble v. State*, 321 Md. 248, 254, 582 A.2d 794, 797 (1990).

> A person accused of a crime is presumed to be competent to stand trial. *Ware v. State*, 360 Md. 650, 703, 759 A.2d 764, 792 (2000). Once the issue of competency is raised, the General Assembly places the duty to determine the defendant's competency on the trial court, in order to ensure that the requirements of due process are satisfied. *Roberts v. State*, 361 Md. 346, 363–64, 761 A.2d 885, 895 (2000). The duty of the trial court may be triggered upon motion of the accused or defense counsel, or upon *sua sponte* action of the court.

16

*Roberts*, 361 Md. at 364, 761 A.2d at 895. As we stated in *Roberts*, the language of the statute, now codified as § 3-104:

> [M]andates actions to be undertaken by a trial court, if an accused's competency is properly called into question. These actions can be broken down into three distinct and simple steps: (1) First, a determination of competency may be made at any time before or during a trial; (2) Second, such a determination must be made if the defendant in a criminal case appears to be incompetent to stand trial or the defendant alleges incompetence to stand trial; and (3) Finally, the court must make its determination on the evidence presented on the record. *Id.* This mandate "indicates that the Legislature intended for every accused, whose competency was called into question, to have at least one guaranteed review of his or her competency status." *Roberts*, 361 Md. at 366, 761 A.2d at 896. Once the issue of competency has been raised, a "determination that an accused is competent to stand trial must be found beyond a reasonable doubt." *Jolley v. State*, 282 Md. 353, 365, 384 A.2d 91, 98 (1978). Additionally, competency to stand trial is a factual determination which will not be reversed unless it is clearly erroneous. *Jolley*, 282 Md. at 375, 384 A.2d at 103.

Additionally, the determination of the court need not be in the form of a formal hearing. *See Roberts*, 361 Md. at 368, 761 A.2d at 897. A judge with no jury present is not "required to use any magic words to designate as a separate hearing the presentation to him of testimony and evidence for his determination of the competency of the accused to stand trial. It is sufficient if the testimony and evidence are on the record." *Id.* Further, once the trial court has determined that the defendant is competent to stand trial, "the court is not required to hold an additional hearing merely because [the defendant] again alleges he is incompetent." *Trimble*, 321 Md. at 255, 582

17

> A.2d at 798; *see also Roberts*, 361 Md. at 364, 761 A.2d at 895
> ("Once an initial determination has been made, a reconsideration
> of the accused's competency may be made and is controlled by
> the discretionary language of [§ 3-104(c) ]").

*Peaks*, *supra*, 419 Md. at 251-53.

In the present case, there was significant evidence in the record upon which the circuit court based its competency findings on both August 6, 2012 and August 24, 2012. Before the court made its initial competency finding on August 6, 2012, the court considered the testimony of Dr. Good, Dr. Good's written report, and the court's own observations of Stewart-Bey's conduct. After concerns were expressed about Stewart-Bey's competency a second time, the court -- out of an abundance of caution -- ordered a second competency evaluation. At the September 24, 2012 hearing, prior to making a competency finding, the court considered two reports prepared by Dr. Grant, one report prepared by Dr. Good, as well as its own observations of Stewart-Bey's conduct. All of the reports described Stewart-Bey's refusal to cooperate with competency evaluations. Furthermore, the court considered the psychologists' testimony and reports, as well as its own observations of Stewart-Bey, when concluding that Stewart-Bey's refusal to participate was based on his own obstinance. Accordingly, we conclude that the court's competency determination was supported by evidence in the record.

Furthermore, a defendant's refusal to participate in a competency evaluation does not preclude a court from finding the defendant competent. In *Peaks*, *supra*, Court of Appeals

18

discussed the manner in which a trial court should determine competency when a defendant refuses to participate in a court-ordered evaluation, explaining as follows:

> When a defendant prevents an evaluation of competency through his or her behavior, a judge may make his or her determination based on the evidence on the record, despite the absence of a formal medical evaluation. Through no fault of either judge in this matter, there was no additional psychiatric or psychological evaluation for the court to consider. [The trial judge] could observe that [the defendant] was competent and that [the defendant's] unruly behavior was the result of his desire to manipulate or disrupt the court proceedings, and not sufficient or credible evidence of incompetence.

*Peaks*, *supra*, 419 Md. at 261. In the present case, the trial court was similarly able to observe that Stewart-Bey was competent and that his refusal to cooperate was based upon his desire to manipulate or disrupt the evaluation process, and not "sufficient or credible evidence of incompetence." *See id.* Indeed, the record reflects that Stewart-Bey's refusal to cooperate was consistent with the "flesh and blood" defense strategy. His conduct did not indicate that Stewart-Bey was unable to understand the nature of the proceedings.

We are further unpersuaded by Stewart-Bey's contention regarding the reasonable doubt standard. Although the trial court did not explicitly state that its competency finding was made beyond a reasonable doubt, the court is "presumed to know the law and to apply it properly." *Wood v. State*, 436 Md. 276, 291 (2013) (quoting *State v. Chaney*, 375 Md. 168, 181 (2003)). The trial court explicitly found Stewart-Bey competent, and Stewart-Bey has not demonstrated that the trial court applied the incorrect standard when making its competency determination. Accordingly, we reject Stewart-Bey's contention that the circuit

19

court erred by failing to make its competency determination beyond a reasonable doubt and hold that the trial court's competency finding was not clearly erroneous.

## III.

Stewart-Bey's next contention is that the trial court erred by finding that he was competent to discharge counsel and act as his own counsel. Specifically, Stewart-Bey asserts that for the same reasons he was not competent to stand trial, he was not competent to discharge counsel and make the choice to represent himself.

Stewart-Bey informed the court that he did not wish to be represented by an attorney at his arraignment on June 22, 2012, in the following exchange:

[DEFENSE COUNSEL]: And for the record, [defense counsel] on behalf of Mr. Stewart-Bey.

THE COURT: Okay.

THE DEFENDANT: Objection.

THE COURT: Excu--

THE DEFENDANT: I have not appointed counsel or requested counsel.

* * *

THE DEFENDANT: I said I object to anybody standing beside me claiming to be my counsel, when I have not requested or appointed counsel.

THE COURT: Okay. What is that, sir?

THE DEFENDANT: Because I am moving in my own right. I stand here *sui juris.*

20

THE COURT: Okay. All right. Sir, but you are entering the appearance on behalf of the Public Defender's Office?

[DEFENSE COUNSEL]: Yes, Your Honor. We'll raise competency.

THE COURT: And you are --

[DEFENSE COUNSEL]: Raise competency, yes.

THE COURT: Okay.

THE DEFENDANT: Objection. What, what I'm not understanding is, is that I've indicated already that I have Title 42, Section 1986, certifiable knowledge of the law. I do not need anybody here to enter their appearance on behalf of the so-called Defendant, on the record.

Also, my competency has already been set in the affidavits of truth that have already been entered into the docket.

Now, he's not my counselor. He is not going to represent me. In fact, you're fired, if you think that you are representing me, or the Public Defender's Office is representing me.

Now, everybody's talking about taking this hearing seriously, but yet the Public, the prosecutor's standing over there as though that I am saying something that's comical, and he finds this funny. Now --

THE COURT: Well, I don't find it funny, but I do find some of the things you are saying to be bizarre. And it gives me concern that you may not be competent to proceed, at which, which could mean you may not be competent to waive counsel. And since that issue has been raised, the [c]ourt is going to order a competency evaluation.

THE DEFENDANT: Okay. Who raised the issue?

21

[DEFENSE COUNSEL]: The Office of the Public Defender has raised this issue.

THE DEFENDANT: Okay. I did not, I did not hire the Office --

THE COURT: Of the Public Defender.

THE COURT: Well, I am finding that they are in the case. You need to have representation. If you are not competent, you cannot waive it.

\* \* \*

THE DEFENDANT: I can definitely handle my own representation.

THE COURT: Okay. I understand you're saying that, sir. But again, there is some, the [c]ourt has concerns and I wanna make sure that you will be in a position to proceed. And if you are competent, then I will go through with you the, again, the benefits of counsel and find whether you are stating a meritorious reason for discharging counsel or not. And then if you are competent and wish to proceed representing yourself, then it, that could happen. That you would have that right. And I'll go over that with you.

After the court advised Stewart-Bey of the charges against him and the maximum penalties for each, at the conclusion of the hearing, Stewart-Bey again expressed that he "d[id] not consent to [the defense attorney] being [his] attorney, or representing [him] in any capacity."

On August 6, 2012, the court held a hearing on Stewart-Bey's competency as well as his request to discharge counsel. After finding Stewart-Bey competent, as discussed in Part II, *supra*, the court addressed Stewart-Bey's request to discharge counsel. The following colloquy occurred:

22

[THE PROSECUTOR]:  Thank you, Your Honor.  As for [the] second issue, I believe Mr. Stewart[-Bey] wants to discharge [the defense attorney's] services.

THE COURT:  Okay.  And the rule we have to look at is 4-215(e).

All right.  Mr. Stewart[-Bey], what reasons do you wish to discharge counsel, sir?

THE DEFENDANT:  For and on the record clarification, for the record my name is Nathaniel Adel Stewart-Bey.  This [c]ourt continues to address me as Nathaniel Stewart, as though that I am going to assume that persona.  That's not going to happen.  I wish for the record to be corrected to be Nathaniel Adel Stewart-Bey.

THE COURT:  Has your name been formally changed, sir?

THE DEFENDANT:  I don't need my name changed by a court of law.

THE COURT:  Okay.

THE DEFENDANT:  That is my name, and has been since my birth.

THE COURT:  All right.  Would you tell me if you have any reason, and if you wish to you could explain the reasons why you are requesting that counsel be discharged and that you represent yourself?

THE DEFENDANT:  I am, first and foremost, I'm not trying to represent myself.  I'm attempting to proceed in my proper person, or either *sui juris*, in my own right.  I don't need to represent myself because I am myself.

Secondly, [the defense attorney] was never retained by me as counsel. [The defense attorney], as well as two or three other attorneys, have subsequently decided that they are going

23

to represent me against my wishes. Nobody can speak my truth, but me. No man can fight my fight, but me. So I object to any other party attempting to speak for me.

And so this [c]ourt is aware, for and on the record, I am here by way of special visitation or special appearance only, as I cannot make a gentle [sic] appearance for the purpose of challenging subject matter jurisdiction.

THE COURT: Do you have any other reasons why you wish to discharge counsel?

THE DEFENDANT: I already stated for the record.

THE COURT: Okay. This is just your opportunity if you have anything in additional [sic] to say.

Do you understand that counsel can be helpful by explaining the allegations against you, and assisting you with defenses you may have, as well as helping you at the hearing? That is helping to prepare your defense. Helping to represent you before the jury. And those are the functions of counsel to, to assist you, but you still wish to discharge counsel, sir?

THE DEFENDANT: Again, counsel was never hired by me, so therefore I do not consider her to have been retained. Her or any other counsel. I have, again, stated for the fourth or fifth time since I've been in this room, as well as previously, that I am proceeding in my own right. Meaning *sui juris.* I have certifiable knowledge under Title 42, Section 1986, certifiable knowledge of the law, and I do not need assistance of counsel.

THE COURT: Okay. I do not find any meritorious reason for discharge of counsel. Understand, sir, that you will be representing yourself.

What is our trial date?

[THE PROSECUTOR]: It's September 5th.

24

THE COURT: You'll be representing yourself on September the 5th. You have received a copy of the charging document, correct?

THE DEFENDANT: I have received no paperwork whatsoever.

The court subsequently provided Stewart-Bey with a copy of the indictment and explained the charges against Stewart-Bey and the maximum penalties for each charge. Prior to the end of the hearing, the court advised Stewart-Bey as follows:

Advised you again that you have the right to be represented by an attorney. An attorney can be helpful by explaining the allegations against you. Assisting you with any defenses you may have. As well as helping you at the trial and any hearings before trial. Also you're looking at a significant amount of incarceration and fine if convicted of any of these offenses, and it would behoove you to have counsel. But you certainly may also represent yourself, if that is what you choose to do. Just want to make sure that you understand that you are giving up that right. And if you cannot afford an attorney that one can be appointed, no cost to you, through the Office of the Public Defender. And we have done that previously, and this is the office that you have discharged today.

So we will -- You will go forward with trial on September 5, 2012, with you representing yourself, unless you employ counsel between now and then.

As discussed in Part II, *supra*, on September 5, 2012, Stewart-Bey was ordered to participate in a second competency evaluation and was again found competent on September 24, 2012. At the September 24 hearing, the circuit court found Stewart-Bey competent to stand trial and specifically found that Stewart-Bey was "able to understand the nature, object of the proceedings, and to assist in his defense or, having waived his right,

25

freely, voluntarily, and knowingly, to counsel, to represent himself." The trial proceeded with Stewart-Bey unrepresented by counsel.

On appeal, Stewart-Bey asserts that he was not competent to discharge counsel for the same reasons he asserts he was not competent to stand trial. As discussed in Part II, *supra*, the circuit court's competency findings -- on both August 6, 2012 and September 24, 2012 -- were not clearly erroneous. "Competence to decide to represent oneself is the same thing as competence to stand trial." *Muhammad v. State*, 177 Md. App. 188, 257 (2007) (citing *Godinez v. Moran*, 509 U.S. 389, 391 (1993)). We have explained that "the necessary competence to choose self-representation over the right to counsel requires *ipso facto* the same degree of competence that is required to stand trial, no more and no less." *Id.* (citing *Godinez*, *supra*, 509 U.S. at 391). We have already held that the circuit court's determination that Stewart-Bey was competent to stand trial was supported by evidence in the record and not clearly erroneous. Accordingly, we hold that the circuit court's determination that Stewart-Bey was competent to discharge counsel was similarly supported by evidence in the record and not clearly erroneous.[8]

---

[8] Stewart-Bey does not assert that the circuit court erred by failing to appropriately apply Maryland Rule 4-215. We note that the circuit court meticulously applied Rule 4-215 by allowing Stewart-Bey to explain why he wanted to discharge counsel. The circuit court found that Stewart-Bey's reasons were not meritorious, informed Stewart-Bey of the trial date, ensured that Stewart-Bey had received a copy of the charging document, informed Stewart-Bey of the importance of assistance of counsel, and advised Stewart-Bey of the nature of the charges and maximum penalties. Furthermore, the circuit court explicitly found that Stewart-Bey waived his right to counsel " freely, voluntarily, and knowingly." *Contra*

(continued...)

**IV.**

Stewart-Bey contends that the circuit court erred by overruling his objection during the prosecutor's opening statement. Because we conclude this issue is not properly preserved for our review, we do not address the merits of Stewart-Bey's contention.

Stewart-Bey points in particular to the following portion of the prosecutor's opening statement:

> [THE PROSECUTOR]: But you'll also hear that the Defendant claims to be what's called a sovereign citizen. Basically he's formulated in his own -- own head that he has renounced his U.S. citizenship which is not true and that he is -- he is his own country now and that the laws of this country, the laws of the State, no longer apply to him.
>
> That's not a good legal theory and that's not how this works and you'll hear from the Judge -- during jury instructions what the law actually is. So keep in mind the Judge is the authority on the law not what the Defendant may or may not say.
>
> THE DEFENDANT: **Objection. Leading.**
>
> THE COURT: Okay. Overruled.
>
> [THE PROSECUTOR]: Like I'm saying; like I was saying -- you know, I'm not, I mean I know what evidence I'll be presenting. I'm not quite sure what may or may not come out from the Defense but the case basically is just -- boils down to a guy who stole tens of thousands of dollars of stuff with fake checks.

---

[8] (...continued)
*Westray v. State*, ___ Md. App. ___, No. 1836, Sept. Term 2012, Slip. Op. at 20-21 (filed June 25, 2014) (explaining that Maryland Rule 4-215(b) requires that a court "determine and announce" that a defendant's waiver of counsel is knowing and voluntary).

27

(Emphasis added.) Stewart-Bey asserts that the prosecutor's statements amounted to impermissible burden shifting and violated Stewart-Bey's privilege against self-incrimination under the Fifth Amendment to the United States Constitution and Article 22 of the Maryland Declaration of Rights.

It is well established that "a contemporaneous general objection to the admission of evidence ordinarily preserves for appellate review all grounds which may exist for the inadmissibility of the evidence." *Boyd v. State*, 399 Md. 457, 476 (2007). "An objection loses its status as a general one where a rule requires the ground to be stated, where the trial court requests that the ground be stated, and *where the objector, although not requested by the court, voluntarily offers specific reasons for objecting to certain evidence*." *DeLeon v. State*, 407 Md. 16, 25 (2008) (internal quotation and citation omitted) (emphasis in original). Unlike a general objection, "when [specific] grounds [for an objection] are articulated, appellate review 'is limited to the ground assigned.'" *Addison v. State*, 188 Md. App. 165, 176 (2009) (quoting *Colvin–el v. State*, 332 Md. 144, 169 (1993)).

At trial, Stewart-Bey objected to the prosecutor's opening statement, voluntarily offering the specific reason of "leading." Stewart-Bey did not make a general objection that would have preserved all grounds for appellate review, nor did Stewart-Bey argue to the trial court that the prosecutor's remarks amounted to improper burden shifting. Accordingly, this issue is not properly before us.

# V.

Stewart-Bey's final contention is that the trial court erred by imposing separate sentences for his convictions for counterfeiting (Counts 3, 7, 10, 13, 16, 19, and 22), issuing a counterfeit document (Counts 4, 8, 11, 14, 17, 20, and 23), and theft (Counts 9, 12, 15, 18, 21) or attempted theft (Counts 5 and 6). The State concedes that Stewart-Bey was improperly sentenced. We agree.

Stewart-Bey was convicted of three separate counts associated with each incident:

- Counts 3, 4, and 5 related to the November 17, 2009 incident at Sam's Club;

- Counts 6, 7, and 8 related to the November 27, 2009 incident at Sam's Club;

- Counts 9, 10, and 11 related to the November 12, 2009 incident at Lowe's;

- Counts 12, 13, and 14 related to the November 13, 2009 incident at Lowe's;

- Counts 15, 16, and 17 related to the November 19, 2009 incident at Lowe's;

- Counts 18, 19, and 20 related to the November 21, 2009 incident at Lowe's;

- Counts 21, 22, and 23 related to the November 22, 2009 incident at Lowe's.

Stewart-Bey was sentenced to ten years' imprisonment for each of the above-referenced counts.[9] The circuit court ordered that the sentences for each incident run concurrent to each but consecutive to the sentences for other incidents.[10]

On appeal, Stewart-Bey asserts that merger is required for each of the sentences for each of three convictions -- counterfeiting, issuing a counterfeit document, and theft or attempted theft -- associated with each incident. In *Moore v. State*, 198 Md. App. 655 (2011), we held that the offense of uttering merged with the offense of attempted theft for sentencing purposes. We explained that the convictions of uttering and attempted theft must merge because the "convictions for uttering and attempted theft all arose out of the same transaction, namely, [Moore's] attempt to cash two forged checks at the M & T Bank on September 6, 2006. Because there is no indication in the language of the statutes governing

---

[9] Stewart-Bey does not challenge the sentences for Counts 1, 2, 25, 26, 29, 30, 31, 33, 34, 35, and 36. For Count 1, Stewart-Bey was sentenced to ten years' imprisonment. For Count 2, Stewart-Bey was sentenced to ten years' imprisonment, concurrent with Count 1. For Counts 25, 29, 30, 31, 33, 34, 35, and 36, Stewart-Bey was sentenced to three years' imprisonment for each count, concurrent with the sentences for Counts 1 and 2.

[10] Specifically, the court ordered that the sentences for Counts 3, 4, and 5 run concurrently to each other but consecutive to the sentences for Counts 1 and 2. The court ordered that the sentences for Counts 6, 7, and 8 run concurrently with each other but consecutive to Counts 1 through 5. The court ordered that the sentences for Counts 9, 10, and 11 run concurrently with each other but consecutive to Counts 1 through 8. The court ordered that the sentences for Counts 12-14 run concurrently with each other but consecutive to Counts 1 through 11. The court ordered that the sentences for Counts 15-17 run concurrently with each other but consecutive to Counts 1-14. The court ordered that the sentences for Counts 18-20 run concurrently with each other and concurrently with Counts 15-17, but consecutive to Counts 1-14. The court ordered that the sentences for Counts 21-23 run concurrently with each other and concurrently with Counts 15-20, but consecutive to Counts 1-14. The total time to be served amounted to sixty years.

theft and uttering that the legislature intended separate punishments for these offenses arising out of the same transaction, the rule of lenity requires a merger of the conviction for the offense carrying the lesser potential penalty into the conviction for the offense with the greater possible penalty." *Id.* at 703-04.

Similarly, in the present case, Stewart-Bey's convictions for counterfeiting and issuing a counterfeit document must merge with his convictions for theft and attempted theft. Each set of three convictions -- counterfeiting, issuing a counterfeit document, and theft or attempted theft -- arose out of the same transaction. As in *Moore*, "there is no indication in the language of the statutes governing theft and uttering that the legislature intended separate punishments for these offenses arising out of the same transaction." *Id.* at 704. Accordingly, we shall vacate the sentences for Counts 3, 4, 7, 8, 10, 11, 13, 14, 16, 17, 19, 20, 22, and 23.[11]

> **SENTENCES ON COUNTS 3, 4, 7, 8, 10, 11, 13, 14, 16, 17, 19, 20, 22, AND 23 VACATED; JUDGMENTS OF THE CIRCUIT COURT FOR CHARLES COUNTY AS TO ALL OTHER COUNTS AFFIRMED; CASE REMANDED TO THAT COURT FOR THE ISSUANCE OF AN AMENDED COMMITMENT RECORD CONSISTENT WITH THIS OPINION. COSTS TO BE PAID 3/4 BY APPELLANT AND 1/4 BY CHARLES COUNTY.**

---

[11] As a practical matter, we note that the actual total sentence to be served by Stewart-Bey is not affected by our merger analysis and decision. All of the sentences that were vacated were required to be served concurrently to sentences that were not vacated, and Stewart-Bey will still face a sentence of sixty years' imprisonment.