REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1361

September Term, 2015

_____

ROBERT ANTOINE WEATHERS

v.

STATE OF MARYLAND

_____

Woodward,
Graeff,
Thieme, Raymond G., Jr.
    (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Thieme, J.
Concurring opinion by Graeff, J.
_____

Filed:  December 1, 2016

As Judge Moylan, writing for this Court, has stated: "The law could not be more clear that a wide discretion is vested in the trial judge to control the course of the trial and the exercise of such discretion will not be reversed on appellate review except on those rare cases where there has been a clear abuse of that discretion." *Thrifty Diversified, Inc. v. Thomas R. Searles*, 48 Md. App. 605, 615 (1981). This is one of those rare cases.

Appellant, Robert Antoine Weathers, was convicted by a jury in the Circuit Court for Baltimore County, Maryland of theft of property with a value of at least $10,000 but less than $100,000. After he was sentenced to fifteen years and ordered to pay $40,000 in restitution, appellant timely appealed. Summarily rephrased, appellant presents the following question for our review:

> Did the circuit court abuse its discretion in finding that there was no meritorious reason for appellant's request to discharge counsel and in denying his request for a postponement?

For the following reasons, we agree that the court abused its discretion in this case and shall vacate the judgment of conviction.

## BACKGROUND

Appellant was charged with numerous thefts from jewelry and liquor stores in Baltimore County, Maryland during the spring and early summer of 2014. Because of potential conflicts with the Office of the Public Defender involving a codefendant, Spencer K. Gordon was assigned to represent appellant in this case as well as three other cases that were charged in the Baltimore County Circuit Court. Ultimately, resolution of this appeal depends on our review of the June 8, 2014, denials of appellant's requests to

discharge Gordon. However, we shall first include a brief discussion of the background of this issue for context.[1]

On December 8, 2014, at a pretrial postponement hearing involving three of appellant's cases, as well as several cases for the codefendant, Robin Tracy Nelson, appellant expressed his dissatisfaction with Gordon by informing the Chief Administrative Judge as follows:

> I don't think I'm going to use Mr. Gordon, Your Honor, because he's ineffective assistance of counsel as of right now. I haven't talked to him or nothing. He's trying to move the case forward, and I'm going to have a paid attorney, Roland Brown, represent me on the rest of these cases.

Appellant maintained that he not only wanted to be tried by a jury, but he also wanted all of his cases tried separately. He further informed the court that "I don't have nothing to say to Mr. Gordon. That's not my attorney. That's Mr. Brown, Your Honor – [.]" After earlier acknowledging that Gordon was not present during the beginning of this hearing, having gone to another courtroom, the court remarked "[i]f you wish to get new counsel or if you're dissatisfied with counsel in any way, you need to take care of that before you come back here."

---

[1] Because of the issue raised, it is unnecessary to discuss the underlying facts of this case in detail. *See Kennedy v. State*, 436 Md. 686, 688 (2014). Suffice it to say that a witness identified appellant as being involved in the robbery of several diamond rings from a Baltimore County jewelry store on New Year's Eve, December 31, 2013. Surveillance video of the robbery was played for the jury at trial.

After the cases were postponed, and following a short recess, Gordon appeared in court and the court then turned to appellant's request to discharge counsel. Appellant explained why he wanted to discharge Gordon:

> [APPELLANT]: Like I said, he was ready to go to trial on this case up here right here, and he hasn't done any type of investigating or any type of homework whatsoever; so how can we move forward when he don't even know anything about the case?

The court asked Gordon if it was his understanding that the cases would be postponed and Gordon replied:

> [DEFENSE ATTORNEY GORDON]: Well, it was my understanding – I told the State that because there was so much discovery in so many cases that I did not feel in a position to go to trial and that I would be asking for a postponement. [The prosecutor] sort of extended me the courtesy of agreeing that if my postponement request was denied that he would put the simplest, what he viewed as the simplest case, and I would concur on first.
>
> So my understanding was I was going to be asking for a postponement, but if it were denied, that's the case that would be tried. I was trying to discuss this with Mr. Weathers back there, and the next thing I knew he was screaming at me; and I just sort of terminated the conversation.

The court asked Gordon if he was prepared to go forward if the case were not postponed, and Gordon answered:

> Your Honor, if push had come to shove, I think I could have gone forward on it. I know that Mr. Weathers hired Mr. Brown on another case. From talking to him at the jail, I think his preference would be for the case to be postponed so that he could try to get Mr. Brown in on that – whatever case is going to go to trial, I think he wants Mr. Brown in on that.

The court then denied appellant's request to discharge Gordon, stating:

> [THE COURT]: I don't find meritorious cause to discharge him, but I understand that may be your preference to hire another attorney. I need you

3

to understand that we postponed this case until March, all right? Anything you're going to do in terms of a change in counsel needs to be done before that date because otherwise if Mr. Gordon is here and saying he's ready to go to that date, you may if you choose to discharge him at that point, you may not get another postponement. So whatever you need to do or whatever you wish to do in terms of counsel, please make sure it's done well in advance of that trial date, all right?

THE DEFENDANT: Thank you, Your Honor.

Approximately three months later, on March 3, 2015, appellant and Gordon appeared before the Administrative Judge Designee (hereinafter "Administrative Judge"). At that time, the Administrative Judge was informed that appellant had four theft cases where he was represented by Gordon, and another case where he was represented by Roland Brown. After being informed that appellant had expressed dissatisfaction with Gordon, the Administrative Judge inquired whether Gordon was prepared for trial and Gordon replied:

[DEFENSE ATTORNEY GORDON]: Well, in all candor, Your Honor, the answer to that would be no, and the reason for that is because the last time the cases were in, [the prosecutor] intended to try one in particular. That's the one that I prepared for on that date, and I did not have any reason to think that that would not be the one to be tried first this time until yesterday when he told me that, in fact, it was one of the other ones that he is going to try first which is why my paralegal now has the files and is organizing materials so that I can prepare properly for that one.

The State informed the court that this case was originally scheduled to be tried a week later, but that, because the attorney for appellant's co-defendant was unavailable, the case would need to be postponed. Gordon informed the Administrative Judge that he could

4

be prepared to proceed in this case, but that it was possible that he would ask for a postponement. Gordon then continued:

> [DEFENSE ATTORNEY GORDON]: Yes. And for the record, just one additional thing. Obviously, Mr. Weathers wanted to be represented by Mr. Brown. I mean, they did – his family did retain Mr. Brown. I guess only had the money to retain him on one case. Obviously, the State can't be forced to try any particular case, but I did speak with his mother this morning; and she has been trying to get in touch with Mr. Brown to make arrangements to retain him on some or all of the remaining cases, so I hope to get confirmation one way or the other on that within the next couple of days.

The court then asked appellant to give his reasons for wanting to discharge Gordon, and the following ensued:

> THE DEFENDANT: Yes. First of all, Your Honor, this is the second time I've seen him considering this whole situation, and as far as the cases that I'm being tried on, I only seen him about one case. The other three cases that the prosecutor had mentioned, me and him have never talked about anything. I have received my motion of discovery, right. I'm in the process of paying Mr. Brown, but I haven't finished paying him yet; so I do want him to represent me as a lawyer in court.

> THE COURT: Well, why are you dissatisfied with the representation of Mr. Gordon?

> THE DEFENDANT: Because I mean –

> THE COURT: That's the question.

> THE DEFENDANT: He hasn't done anything for my case, Your Honor, nothing whatsoever. I mean, he hadn't been to see me but once. That was, like, about four months ago.

After Gordon again assured the Administrative Judge that there was no reason why he could not be prepared, the court found there was no meritorious reason to discharge Gordon, as follows:

5

THE COURT: All right. I find that there's no meritorious reason for the discharge of Mr. Gordon at this time. Now, since I've reached that conclusion, I cannot – I must advise you now that I cannot legally prevent you from discharging or firing Mr. Gordon if that's what you want to do.

You have the right to represent yourself in – come next Tuesday, but if you fire your attorney right now, make no mistake about it. This trial, one of these two trials will proceed as scheduled. You'll be representing yourself if you have not hired another attorney and if that other attorney is not prepared to represent you.

So under the circumstances, is it – do you – so here's the way it is. If you fire him right now, you're going to be without any attorney, and I'm not making a postponement decision in this case based on the March 10th trial date nor would I postpone the case. Has it been postponed before?

[DEFENSE ATTORNEY GORDON]: Yes, Your Honor.

[PROSECUTOR]: Numerous times.

THE COURT: So I don't believe that the law requires me to give Defendants these endless opportunities to make decisions about who to hire. I think that this is not the first time this issue's been raised before the Court, and under the circumstances, if I'm the postponement judge, you can count on not getting a postponement. So at that point in time, you'll be representing yourself. Do you wish to fire Mr. Gordon today with the idea that you will be left representing yourself come March 10th, 2015? Yes or no?

THE DEFENDANT: Yes.

The Administrative Judge then conducted a waiver inquiry and informed appellant about what would be required if appellant decided to represent himself at trial. Ultimately, the court concluded that appellant knowingly and voluntarily waived his right to counsel. The court then asked appellant if he was firing Gordon in all of his cases and appellant replied, "I didn't know I had him on all of my cases, Your Honor." At that point, the State informed the court that it was not sure which case it would try first and that it "would

6

choose a case where [Gordon] would adequately be prepared." The Administrative Judge then directed the parties to resolve which case was being tried first in order to ensure that appellant's decision to waive counsel was made "on a knowing basis."

After a recess, the State informed the court that it would proceed on two different cases, other than the case under consideration, and Gordon responded that he was prepared in those other cases. Based on this clarification of the trial schedule, the Administrative Judge again gave appellant a chance to discharge Gordon, but, before appellant could respond, Gordon suggested that the State and the court consider first trying appellant in the case where he was represented by Roland Brown. Although the court noted that depended entirely on attorney Brown's schedule, appellant indicated his agreement with this suggestion.

Thereafter, and without a firm decision which of the numerous theft cases against appellant would be tried first, the court and the appellant engaged in the following colloquy:

> THE COURT: That's all fine. The question here is, do you want to fire Mr. Gordon in these other cases, yes or no? You've heard my explanations and you've given your responses. Do you want to fire him in these cases? I firmly recommend against it, but you do what you want.
>
> THE DEFENDANT: No. I will keep him, Your Honor.
>
> THE COURT: Okay. So noted. Thank you.

Six days later, on March 9, 2015, the Administrative Judge granted another postponement for appellant in this case. Notably during the course of that hearing, which

7

also included requests for postponement from appellant's co-defendant, Nelson, Gordon proffered that, since the last hearing, Roland Brown secured an acquittal for appellant in another similar case in a neighboring jurisdiction. Based on that, appellant requested that a different case, where he was also represented by Brown, be tried first. However, the Administrative Judge denied further postponement in that case.

Returning to the case under consideration here, the following colloquy at this March 9th hearing occurred:

> THE COURT: Again, Mr. Weathers, is it your desire to engage the services of new counsel for this case?
>
> THE DEFENDANT: Yes, Your Honor, all the cases that Roland Brown represents –
>
> THE COURT: Wait a minute. Somebody's stepping on something. Everybody, check your feet. All right. It appears to have been cured. So I'm sorry. What did you say, Mr. Weathers?
>
> THE DEFENDANT: I said the cases that Roland Brown is not representing me, the cases that he hasn't stood in yet to represent me on, I'm asking can I require [sic] counsel for those cases? I've already hired counsel for those cases.
>
> THE COURT: Oh, aside from the one where you just said you've hired Mr. Rosenberg?[2]
>
> THE DEFENDANT: Right. On all the cases that he's been filed on –
>
> THE COURT: That what?

---

[2] During the hearing, appellant informed the court, for the first time, that he was attempting to secure the services of another attorney, Lawrence Rosenberg, for some of his cases other than the one under consideration.

THE DEFENDANT: All the cases that he's been filing on, I have counsel that's representing me.

THE COURT: Okay. Well, I don't think I permitted the – you to discharge Mr. Gordon the last time you were here, did I?

THE DEFENDANT: But I can still hire counsel. I'm still allowed to hire counsel, can't I, Your Honor?

THE COURT: I'm sorry?

THE DEFENDANT: I said I'm still allowed to hire my own counsel?

THE COURT: You're not allowed to play games which is what you're doing –

THE DEFENDANT: I'm not playing any games, Your Honor.

THE COURT: So I'm not permitting the discharge of Mr. Gordon unless and until other attorneys enter their appearance on his behalf.

THE DEFENDANT: No problem. I don't have no problem with that.

Turning now to the events that occurred three months later, on June 8, 2015, the morning set for trial, the Administrative Judge heard another request for a postponement in this case. Defense attorney Gordon informed the court that, since the last hearing, appellant was acquitted in the separate case where he was represented by Roland Brown. However, appellant also had been convicted in another case in Washington County, for which he received a ten year sentence.[3] Gordon had not spoken with or seen appellant in the meantime. Gordon continued:

_____

[3] The record does not reveal if appellant was represented in the Washington County case and, if so, by whom.

9

He comes here today – I've received no indication whatsoever that he still has intentions or the ability to retain private counsel to represent him on any of the remaining cases including the one today. However, when I went to see him in the lockup, the first thing he said to me was where's Mr. Brown? You're not my attorney.

I want Mr. Brown to represent me. And he believes that that is something that is in the works. I then came and saw [the prosecutor] next to the courtroom, and he tells me that he had seen Mr. Brown today and said oh, are you going to be on this case and Mr. Brown said no.

So Mr. Weathers would like Mr. Brown to represent – he has successfully represented him and obtained two acquittals for him on two separate charges, one in Montgomery, one in Baltimore County. I can understand why he would want Mr. Brown to be his attorney, but Mr. Brown is not here. A case is scheduled today. I'm the one here, but he doesn't want me to represent him. He would like this case postponed so that he can continue to try and make arrangements with Mr. Brown.

The prosecutor confirmed that it was his understanding that, after speaking to attorney Brown, that Brown was not prepared to enter this case. But, the prosecutor informed the court that he was ready to call this case for trial.

At that point, the Administrative Judge summarized the history of this case, similar to that set forth herein. He then verified that appellant had a copy of the charging document, informed him of his right to counsel and the importance of having an attorney represent him, and confirmed that appellant understood the nature of the charges in this case.

The court then asked if defense attorney Gordon was prepared to proceed and Gordon replied in the affirmative, "[e]xcept for one thing, Your Honor." Gordon then stated:

[DEFENSE ATTORNEY GORDON]: . . . [T]here apparently is a surveillance video and among different bits of discovery that I got, I do not see that I obtained that. I did notify [the prosecutor] of that, and he does have that with him. So I've not seen the surveillance video and would like an opportunity to see that, but.

THE COURT: All right. What's on the surveillance video?

[PROSECUTOR]: Your Honor, it's the Defendant and a co-Defendant at a – in the jewelry shop at a display counter and then leaving after they were both seen on the video getting very close to the – and the State's allegation is putting their hands in the display case.

THE COURT: And so how long does it take? How long is this video?

[PROSECUTOR]: Five –, ten-minute video.

The court asked appellant if he wanted to explain why he still wanted to discharge

Gordon, and appellant replied:

. . . While Mr. Gordon, he came to see me twice, right, during this whole process, and when he came to see me, he talked about the case that he's supposed to represent me on today. He never talked about that.

He talked about two other cases that he was supposed to represent me on, you know, so this case right here, how can he be familiar with the case when we never even talked about it? We never discussed this case. He never gave me the motion of discovery or anything, Your Honor, you know.

After Gordon agreed with that statement, appellant continued:

[THE DEFENDANT]: So what happened, Your Honor, is you know, I'm in the process now like you told me before, you said, you know, try to get Mr. Brown. I got Mr. Brown for the other case where I got an acquittal, right, and I'm in the process of getting him on this case. Your Honor, you know. Like I say, Mr. Gordon is not familiar with this case at all whatsoever. You know, he hasn't studied this case?

He hasn't told me anything about the case, you know. All he's saying is we're going in front of this case and give me the case number and that was it. You know, I haven't talked to him in, like, three months, so how can he

11

be familiar with this case whatsoever? You know, the other two cases that you told me to represent me on if Mr. Brown wouldn't be available, these are none of the two cases that you told me to represent me on.

> [DEFENSE ATTORNEY GORDON]: *It is true, Your Honor, that I have not discussed this case with him, that's true, but I am familiar with it from reviewing it.*

(emphasis added).

Despite this acknowledgment from appellant's assigned defense attorney, the Administrative Judge denied the renewed motion to discharge Gordon, stating:

> [THE COURT]: Okay. The Court concludes that the Defendant has not established a meritorious reason to discharge Mr. Gordon, but I cannot legally prevent you from discharging or firing him. You have the right to represent yourself, but if you fire Mr. Gordon right now, make no mistake about it, this trial will proceed as scheduled. You will be representing yourself if you have not hired another attorney. It sounds like you have not hired another attorney. So do you wish to discharge Mr. Gordon or keep Mr. Gordon?

> THE DEFENDANT: Well, I'm going to have to keep him to represent – you know, to help represent me –

> THE COURT: So ordered. Next case.

> [PROSECUTOR]: Your Honor, can we go – can I approach for the file to go back down to Judge Purpura?

> THE COURT: Yes. And any postponement request is denied.

The case was then sent to the trial judge for a jury trial. Before jury selection, appellant asked to speak to the court. Appellant was sworn in and stated that Gordon told him "he's just getting into this case . . ." Appellant questioned how Gordon could "know anything about this case within a couple hours, Your Honor?" The trial judge confirmed

12

that this same issue was heard earlier that day by the Administrative Judge. The court then

asked for further explanation from attorney Gordon and Gordon stated as follows:

> [DEFENSE ATTORNEY GORDON]: Mr. Weathers, as you know, has a number of cases in Baltimore County, so there have been global discussions between Mr. Weathers and I. The cases were all staggered two weeks apart. What I told [the Administrative Judge] was that *it is true that I had not had an opportunity to speak with Mr. Weathers about this particular case*.
>
> I have had all the discovery in all of the cases, and so *I have had an opportunity to review the discovery in all of the cases; but I had not had an opportunity prior to today to speak to Mr. Weathers*. He's been – he's had cases in multiple jurisdictions. His location has changed as a result of a conviction in another county.
>
> I had a telephone interview scheduled with him that I couldn't make because I got caught up in court way later than I anticipated. He's on lockup which is a conflict. *So it is true that I did not have an opportunity between the date that the last trial was scheduled two weeks ago and today to discuss these particular allegations in this particular case with him. That is true*.
>
> THE DEFENDANT: So you don't know anything about this case?
>
> [DEFENSE ATTORNEY GORDON]: Well, I wouldn't say I don't know anything about this case. Discovery is not voluminous. *I know the facts of the case, but I haven't discussed them with Mr. Weathers*, but those were among the reasons why I requested of you the opportunity to do motions today and then have an opportunity *to then talk to Mr. Weathers during the recess between today and tomorrow* and also spend some time this evening going through it.

(emphasis added).

After speaking with the prosecutor, the trial judge clarified that the Administrative

Judge had found no meritorious reason for appellant to discharge attorney Gordon.

Appellant then stated that he did not want to fire Gordon but wanted to be able to "help

13

him as the trial go[es] on[.]" The court confirmed that appellant could consult with Gordon during trial.

The trial judge then inquired whether the Administrative Judge knew that Gordon had not spoken to appellant before trial and was assured that information was presented to him. The trial judge also asked whether the Administrative Judge knew that Gordon had all the discovery in the case, and Gordon replied that he told the Administrative Judge "that I had had an opportunity to review this case is what I said." At that point, appellant interjected as follows:

> THE DEFENDANT: But even you told me that you didn't want to be part of this case. You told me that in the bullpen. You told me that, so you told me to let the judge know we're not going there. Didn't you say that?
>
> [DEFENSE ATTORNEY GORDON]: I think I can put my personal feelings aside and try this case, Mr. Weathers.

Gordon continued:

> [DEFENSE ATTORNEY GORDON]: I understand. Your Honor, if I could just say, the relationship between myself and Mr. Weathers has been somewhat acrimonious from the start. And you know, part of the problem is that he – his family obviously has had the funds to retain private counsel to represent him on two separate cases and in both of those cases, he was acquitted. So he sort of comes to court wishing he could have that attorney who has already successfully defended two cases continue to be his attorney. I'm saying you wish – you would like Mr. Brown to be your attorney?
>
> THE DEFENDANT: We tried to get Mr. Brown. He didn't, you know, return the calls and my family was still in contact trying to get in touch with him.
>
> [DEFENSE ATTORNEY GORDON]: Right. So that is the source of Mr. Weathers' frustration, and as a result of that frustration, there has been

some acrimony directed at me; and I would admit that there's probably been some acrimony directed at him –[4]

THE COURT: And this is all again – this was all presumably addressed in front of [the Administrative Judge]?

[DEFENSE ATTORNEY GORDON]: Well, maybe not this part of it, but yes.

The trial judge then decided to conduct "a 4-215 hearing just to keep the record clear because it sounds like more issues are coming up." Appellant was then formally called to the witness stand and testified that he was innocent of the charges and had told this to Gordon. Appellant testified:

I told him that today. I told him that almost two months ago, the last time I seen him, right, and I told him if he was to represent me that he would have to get into the cases. He couldn't come see me like once a month and just say what we going to do?

You know, he didn't go over none of the cases with me. He didn't go over the motion of discovery. He don't have all the motion of discovery for this case, for this case right here, so how can he prepare for a jury trial? And he didn't have the motion of discovery prepared, you know?

According to appellant, Gordon also conceded to him, apparently at some point prior to trial, that Gordon had not reviewed the surveillance video in this case. Nevertheless, Gordon simply told appellant to go ahead "and take a plea and get it out the way because he [has] other charges in different jurisdictions . . ." Therefore, appellant stated that he was "uncomfortable" with Gordon. To that, the court replied, "[w]ell, being

---

[4] The transcript states that these comments were made by the court, but in context it is clear that this paragraph was actually spoken by Gordon.

uncomfortable isn't enough. *What has he done wrong?*" Appellant replied, *"I haven't seen him to tell him to do anything.*" (emphasis added). Appellant agreed that he spoke to Gordon about different cases, but maintained that they did not speak about the details of this case.

The court then turned to how Gordon was originally appointed and then noted that Gordon had been filing papers on appellant's behalf in this case, including motions for discovery and an omnibus motion to suppress. Gordon then informed the court that he was eventually provided the surveillance video in this case, had reviewed it, and "certainly would like to discuss it with Mr. Weathers." But, Gordon continued:

> There's nothing based on that view of that DVD that makes me feel like I need a continuance to get witnesses or be further prepared for the case. I certainly could have done a better job of communicating with Mr. Weathers, but I am prepared to try the case.

After appellant agreed that he had not communicated with Gordon about this case and questioned whether Gordon was prepared, the trial judge denied appellant's motion to discharge, finding as follows:

> Okay. Well, Mr. Weathers, based on what you've told me which is simply that you're uncomfortable and that you haven't had a chance to talk to him, but also based on my review of the file indicating that Mr. Gordon has filed all the necessary motions timely, very quickly within two weeks of his being appointed to the case, I don't see that you do have a meritorious reason to discharge him.
>
> So I can't – I won't discharge him because I don't find a meritorious reason. You – on the other hand, if you want to do so, you still have that right to discharge him, but you would have to try the case without a lawyer. So it's going to be – it's going to start today, so what do you want to do?

16

After briefly changing his mind and temporarily withdrawing his request to discharge counsel, appellant ultimately asked that Gordon remain on as a "standby" attorney. After *voir dire*, jury selection and a hearing on a motion to suppress were conducted, this issue of the nature of Gordon's continued representation/relationship to this case reared up once more, notably prior to opening statements and the reception of evidence. Ultimately, the trial judge found that appellant "freely, voluntarily, knowingly, and intelligently" waived his right to counsel, that Gordon would remain on as standby counsel and would be available to answer questions, but would not participate in the trial itself unless so directed by appellant. The court then struck Gordon's appearance, but also told appellant that he could change his mind and Gordon could be reappointed to represent appellant if appellant so desired.[5]

---

[5] We note that Gordon's participation was not limited to mere consultation with the appellant throughout the course of the proceedings. Instead, at appellant's express request, defense attorney Gordon actually conducted *voir dire* and was very involved in selecting the jury. He also argued the motion to suppress an identification, examining the majority of the witnesses on the record. And the next day, Gordon continued to argue motions prior to and during trial, made opening statements, objected to witness's testimony, cross-examined and recross-examined the victim, responded to the State's objections during bench conferences, argued the motion for judgment of acquittal at the end of the State's case-in-chief, participated with appellant in discussing the instructions with the court, and, after appellant was convicted by the jury, argued for mitigation prior to sentencing. As stated, Gordon's participation in this manner was made at appellant's express, on-the-record, request. But, the record also shows that appellant did, to a certain degree, assume the mantle of self-representation. He asked a number of questions during the motions hearing. He also cross-examined and recross-examined three witnesses during trial. And, appellant made his own closing argument.

The prosecutor objected to Gordon's participation in this manner, suggesting that this "does rise to representation" and "is not in the purview of standby counsel." The Court

17

DISCUSSION

On appeal, appellant contends that the circuit court abused its discretion in finding that there was no meritorious reason for appellant's request to discharge defense counsel Gordon and in denying appellant's request for a postponement. Appellant's primary argument is based on Gordon's concession that, prior to trial, he did not discuss this case with appellant.

The State responds that the circuit court properly exercised its discretion in denying the motion to discharge Gordon. The State's argument is premised on the ground that, although he had not yet spoken to appellant about this case on the morning set for a jury trial, defense counsel knew the facts of the case and was prepared to proceed to represent appellant at trial.

We shall hold that, under the circumstances of this case, the circuit court abused its discretion in finding no meritorious reason for appellant's request to discharge counsel pursuant to Maryland Rule 4-215 (e).

The right to counsel is guaranteed by the Sixth Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Rights. *See Gideon v.*

---

of Appeals has held that hybrid representation is not allowed in Maryland. *See Harris v. State*, 344 Md. 497, 511 (1997) ("[T]here are only two types of representation constitutionally guaranteed – representation by counsel and representation pro se – and they are mutually exclusive.") (quoting *Parren v. State*, 309 Md. 260, 265 (1987)). However, no issue with respect to hybrid representation is presented in this appeal.

*Wainwright*, 372 U.S. 335, 342-43 (1963).[6]  "If the defendant cannot afford private representation, then he or she is entitled to an effective defense from a public defender or court appointed attorney." *Gonzales v. State*, 408 Md. 515, 529-30 (2009); *see also Dykes v. State*, 444 Md. 642, 648 (2015) ("[T]he defendant has a right to counsel appointed at government expense" (citing *Gideon, supra*)).  "If the defendant can afford private representation, however, then the defendant has a right to the attorney of his or her choice." *Gonzales*, 408 Md. at 530.

In addition, a defendant in a criminal prosecution also has a constitutional right to have effective assistance of counsel and the corresponding right to reject that assistance and represent himself.  *Powell v. Alabama*, 287 U.S. 45, 71 (1932) (recognition of the constitutional right to the effective assistance of counsel); *see also Dykes*, 444 Md. at 648 ("The right to counsel 'guarantee[s] an effective advocate for each criminal defendant rather than . . . ensur[ing] that a defendant will inexorably be represented by the lawyer whom he prefers.'") (quoting *Alexis v. State*, 437 Md. 457, 475 (2014), in turn quoting *Wheat v. United States*, 486 U.S. 153, 159 (1988)).

As part of the implementation and protection of this fundamental right to counsel, the Court of Appeals adopted Maryland Rule 4-215, "which explicates the method by which the right to counsel may be waived by those defendants wishing to represent

---

[6] The right to counsel provisions of the Maryland Declaration of Rights, Article 21 and the Sixth Amendment to the federal constitution are generally held to be coextensive and there is no argument presented here that they should be interpreted differently. *Parren v. State*, 309 Md. 260, 262-3 n.1 (1987).

themselves . . . ." *Broadwater v. State*, 401 Md. 175, 180 (2007); *accord Dykes*, 444 Md. at 651. "The purpose of Rule 4-215 is to 'protect that most important fundamental right to the effective assistance of counsel, which is basic to our adversary system of criminal justice.'" *Williams v. State*, 435 Md. 474, 485 (2013) (quoting *Parren v. State*, 309 Md. 260, 281 (1987)). Further, the Rule "provides an orderly procedure to insure that each criminal defendant appearing before the court be represented by counsel, or, if he is not, that he be advised of the Sixth Amendment constitutional right to the assistance of counsel, as well as his correlative constitutional right to self-representation. *Broadwater*, 401 Md. at 180-81 (citation omitted). The requirements of the Rule are "mandatory," require "strict compliance," and "a trial court's departure from the requirements of Rule 4-215 constitutes reversible error." *Pinkney v. State*, 427 Md. 77, 87-88 (2012) (citations omitted).

"We review *de novo* whether the circuit court complied with Rule 4-215." *Gutloff v. State*, 207 Md. App. 176, 180 (2012). However, so long as the court has strictly complied with Rule 4-215(e), we review the court's decision regarding whether to grant or deny a defendant's request to discharge counsel for abuse of discretion. *State v. Taylor*, 431 Md. 615, 630 (2013). "'Abuse of discretion' . . . has been said to occur 'where no reasonable person would take the view adopted by the [trial] court,' or when the court acts 'without reference to any guiding rules or principles.'" *Nash v. State*, 439 Md. 53, 67 (quoting *North v. North*, 102 Md. App. 1, 13 (1994)), *cert. denied*, 135 S. Ct. 284 (2014). Further:

> " '[A] ruling reviewed under an abuse of discretion standard will not be reversed simply because the appellate court would not have made the same ruling.' " *Alexis v. State*, 437 Md. 457, 478, 87 A.3d 1243 (2014) (emphasis

20

omitted) (quoting *North v. North*, 102 Md. App. 1, 14, 648 A.2d 1025 (1994)). "Rather, '[a] court's decision is an abuse of discretion when it is 'well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable.' " *Id.* (quoting *Gray v. State*, 388 Md. 366, 383, 879 A.2d 1064 (2005) (quoting *Dehn v. Edgecombe*, 384 Md. 606, 628, 865 A.2d 603 (2005)) (some internal quotation marks omitted)).

*Norwood v. State*, 222 Md. App. 620, 643, *cert. denied*, 444 Md. 640 (2015).

Pertinent to our discussion, Maryland Rule 4-215 (e) provides as follows:

If a defendant requests permission to discharge an attorney whose appearance has been entered, the court shall permit the defendant to explain the reasons for the request. If the court finds that there is a meritorious reason for the defendant's request, the court shall permit the discharge of counsel; continue the action if necessary; and advise the defendant that if new counsel does not enter an appearance by the next scheduled trial date, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds no meritorious reason for the defendant's request, the court may not permit the discharge of counsel without first informing the defendant that the trial will proceed as scheduled with the defendant unrepresented by counsel if the defendant discharges counsel and does not have new counsel. If the court permits the defendant to discharge counsel, it shall comply with subsections (a)(1)-(4) of this Rule if the docket or file does not reflect prior compliance.

This Court of Appeals has explained that this rule:

[C]reates a three-step process for discharge of counsel. First, when the defendant indicates a desire to dismiss counsel, the court must provide an opportunity for the defendant to explain the reason for dismissal. Second, the court must evaluate the reason to determine if it is meritorious. If the reason is meritorious, the court must permit dismissal, continue the case if necessary, and warn the defendant that he or she may be required to proceed pro se if new counsel is not engaged by the next trial date. If the reason for dismissal is not meritorious, however, the court must engage in a third-level inquiry. The court may still permit dismissal of counsel, but only after warning the defendant of the possibility he or she will proceed pro se if substitute counsel is not secured. The court may also reject the defendant's request to dismiss counsel if the reason is not meritorious.

21

*State v. Brown*, 342 Md. 404, 425 (1996); *accord Gonzales*, 408 Md. at 531-32; *see also*

*Williams v. State*, 321 Md. 266, 273 (1990) ("Where the trial judge finds a defendant's

reasons to be meritorious, he must grant the request and, if necessary, give the defendant

an opportunity to retain new counsel").

There is no claim in this case that the circuit court failed to comply with the technical

requirements of Maryland Rule 4-215 (e).  Indeed, the record shows that the various judges

in the circuit court gave appellant ample opportunity to air his grievances against defense

counsel.  Instead, the issue before this Court is limited to whether the circuit court abused

its discretion in finding that there was no meritorious reason for appellant's request to

discharge counsel.  On that issue, the parties agree there is little guidance for our

consideration.  The Court of Appeals has observed:

> The rule does not define "meritorious." This Court has equated the
> term with "good cause." *See Gonzales v. State*, 408 Md. 515, 531-33, 970
> A.2d 908 (2009); [*State v. Campbell*, 385 Md. 616, 627 (2005)]; *State v.
> Brown*, 342 Md. 404, 413, 676 A.2d 513 (1996). This determination –
> whether there is "good cause" for discharge of counsel – is "an indispensable
> part of subsection (e)" and controls what happens in the third step. *Williams*,
> 321 Md. at 273, 582 A.2d 803.

*Dykes*, 444 Md. at 652.

There are few examples of what constitutes a "meritorious" reason in Maryland case

law.  In *Grandison v. State*, 341 Md. 175 (1995), the Court of Appeals affirmed the trial

court's finding that the defendant did not have a meritorious reason to discharge counsel,

where the defendant, Grandison, wanted to present a different defense than did his attorney.

This did not constitute meritorious grounds because counsel never expressly refused to

present Grandison's preferred defense and because the two defenses were not incompatible. *Id.* at 202.

The Court of Appeals also affirmed a finding of no merit in *Fowlkes v. State*, 311 Md. 586 (1988). The relevant facts of the case and the Court's conclusion, were summarized as follows:

> In this case, the defendant at various points advanced several different reasons for his request. He claimed that his attorney did not have "the true facts," that she could not represent him "on behalf of honesty," and that she had not diligently sought to obtain the appearance of his witnesses. The trial judge found these reasons unmeritorious. She stated that the defendant's attorney "was highly competent" and had "had plenty of time to prepare." Moreover, she noted that the absent witness had failed to appear only because the defendant had supplied an incorrect address.
>
> The record fully supports the trial judge's conclusion that the defendant's request was unmeritorious. The judge had an opportunity to assess [defense counsel's] competence and dedication during pretrial proceedings and the circumstances thereafter. The eight months that elapsed between the defendant's indictment and the trial date surely afforded more than enough time for preparation and for the defendant to find an attorney more to his liking. The judge was entitled to credit [defense counsel's] statements concerning her efforts to summon the missing witness. Moreover, from the defendant's own statements, the judge could have concluded that the defendant was motivated less by dissatisfaction with his attorney than by an unjustified desire for delay. . . . [T]he defendant objected not only to representation by the Office of the Public Defender but also to the trial going forward under any circumstances. In addition, after the defendant discharged his attorneys, he admitted, "I ain't trying to get tried."

*Id.* at 607. *See Alford v. State*, 202 Md. App. 582, 609 (2011) (upholding trial court's findings that reasons for request for discharge were unmeritorious, including appellant's claim of inadequate communication with defense counsel, where "defense counsel was credible when she stated that she reasonably responded to appellant's requests for

23

communication, as she responded to all three written requests and visited appellant twice before trial"); *see also United States v. Allen*, 789 F.2d 90, 93 (1st. Cir. 1986) (appellant's "loss of confidence in his attorney" does not constitute good cause to assign new counsel) (cited in *State v. Brown, supra*, 342 Md. at 413 & n.3).

Here, the primary reason cited for appellant's request to discharge his attorney was defense counsel's concession, on the record, on the day of trial, that he had not yet spoken to appellant about this case. Appellant directs our attention to *In re Shawn P.*, 172 Md. App. 569 (2007). There, Shawn appeared for his adjudicatory hearing without an attorney, though he stated that he desired representation. *In re Shawn P.*, 172 Md. App. at 572. The court found that, by appearing without counsel, he waived his right to an attorney by inaction. *Id.* at 573. However, an assistant public defender, who happened to be in the courtroom, agreed to enter an appearance on Shawn's behalf, even though he had never spoken with him and was completely unfamiliar with the facts of the case. *Id.* at 574. Defense counsel then requested a continuance to prepare for the hearing, which was denied. *Id.* Instead, the court ordered the case to proceed immediately to trial and Shawn was found involved in the offense of second degree assault and adjudicated a delinquent. *Id.* at 571.

On appeal, this Court held that the trial judge "abused his discretion by denying counsel's request for a continuance or, in the alternative and at the very least, by refusing to afford counsel an opportunity to confer with appellant." *In re Shawn P.*, 172 Md. App. at 588. In addressing whether Shawn was denied the effective assistance of counsel, we explained:

[T]he effectiveness and unreasonableness of counsel's performance may be determined or substantially influenced by his client's own statements and actions. Informed strategic choices by counsel based on information supplied by the defendant and, in particular, decisions as to what investigative strategies will bear fruit depend on information uniquely within the knowledge of the client. Where, as in the case at hand, there has been absolutely no communication between counsel and appellant, and counsel has been denied an opportunity for even a brief consultation with appellant, it can hardly be said that appellant had effective assistance of counsel.

*In re Shawn P*., 172 Md. App. at 584.

Much of this stems from a lawyer's duty to communicate with his or her client. The Rules of Professional Conduct provide:

(a) An attorney shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0 (f), is required by these Rules;

(2) keep the client reasonably informed about the status of the matter;

(3) promptly comply with reasonable requests for information; and

(4) consult with the client about any relevant limitation on the attorney's conduct when the attorney knows that the client expects assistance not permitted by the Maryland Attorneys' Rules of Professional Conduct or other law.

(b) An attorney shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Maryland Attorneys' Rules of Professional Conduct ("MARPC") 1.4 (Md. Rule 19-301.4).

Generally, "a lawyer representing a criminal defendant has a duty under Rule 1.4 to promptly inform and consult with the client about issues over which a client has decision-making authority. The obligation is also a function of the defendant's constitutional

rights." Bennett et al., *Annotated Model Rules of Professional Conduct*, Rule 1.4, at 63 (8th ed. 2015) (collecting cases); *see Attorney Grievance Comm'n of Maryland v. Gelb*, 440 Md. 312, 321 (2014) ("Respondent's lack of communication denied the complainants the opportunity to make informed decisions regarding their representation, in violation of MLRPC 1.4(b)"); *see also Attorney Grievance Comm'n of Maryland v. Monfried*, 368 Md. 373, 385-90 (2002) (concluding attorney violated MARPC 1.4 in one case by failing to interview client and by failing to keep client informed of status of case, and in another case by failing to meet with client or to meet with him prior to a parole revocation hearing). Indeed:

> "[T]he defendant ordinarily has the ultimate decision when the issue at hand involves a choice that will inevitably have important personal consequences for him or her, and when the choice is one a competent defendant is capable of making." Examples of that type of decision include whether to testify on one's own behalf, whether to forego trial by way of a guilty plea, and waiver of right to trial by jury.

*Grandison*, 341 Md. at 261-62 (quoting *Treece v. State*, 313 Md. 665, 674 (1988)); *see also* Fortune, et al., *Modern Litigation and Professional Responsibility Handbook*, §14.2.3 at 502 (2d ed. 2001) ("The conscientious criminal lawyer must keep the client fully informed and advise him 'with complete candor concerning all aspects of the case, including a candid estimate of the probable outcome.' After consultation, it is for the client to decide how to plead, whether to waive jury, and whether to testify.") (footnotes and citation omitted). As one commentator has explained:

> An attorney has an obligation to communicate with the client, and failure to discharge this duty is a proper ground for disciplinary action. It is the duty

26

> of the attorney to inform clients of relevant considerations and factors in the decision-making process and of their rights and interests in the subject matter, and to give the clients the opportunity to make decisions. Failure to do so renders the lawyer subject to disciplinary action.

Hall, *Professional Responsibility in Criminal Defense Practice*, § 32.14 at 1206 (3d ed. 2005) (footnotes omitted).

Here, although he had entered an appearance in this case some nine months earlier, defense counsel admitted that, on the morning of trial, he had not yet discussed this case with appellant. Instead, Gordon planned on discussing the case with appellant after the first day of trial, which, in this case, did not occur until *after* the jury had been selected and after testimony was received on a motion to suppress the identification of appellant by the victim in this case. This anticipated communication would come too late as it is well established that *voir dire* is a critical stage of a criminal proceeding. *See State v. Hardy*, 415 Md. 612, 628 (2010) (holding that, for purposes of claims under Maryland Rule 4-215, "meaningful trial proceedings" began with the *voir dire* process in a criminal trial). Certainly, communication about the details and nature of the case at hand would have informed the jury selection process. And, there is no doubt that any discussion at all also could have helped with the motion to suppress the victim's identification.

Additionally, Gordon conceded that he had not yet discussed the surveillance video with appellant. Indisputably, the video was a key piece of the evidence against appellant. Contrary to any suggestion otherwise, we question whether defense counsel could truly be prepared when he or she did not discuss the primary evidence in the case with the client

27

prior to the commencement of trial.  We would be presented with a much different case had the court simply granted a brief postponement, or perhaps simply continued the case until the next day, so that these communications could take place.

We recognize that appellant informed the trial judge that he and counsel had apparently discussed a plea in this case.  Nevertheless, appellant maintained that they did not discuss the discovery or the facts of this case.  And, at minimum, there is nothing in this record showing that the failure to communicate was caused by or somehow due to appellant's refusal to talk to counsel.

Accordingly, we conclude that counsel's admitted failure to discuss this case with appellant, under the circumstances, was a meritorious reason for discharge of counsel.  Because the court abused its discretion in concluding otherwise, we shall vacate the judgment and remand for further proceedings.

**JUDGMENT VACATED AND REMANDED FOR FURTHER PROCEEDINGS.**

**COSTS TO BE PAID BY BALTIMORE COUNTY.**

28

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1361

September Term, 2015

_____

ROBERT ANTOINE WEATHERS

v.

STATE OF MARYLAND

_____

Woodward,
Graeff,
Thieme, Raymond G., Jr.
     (Senior Judge, Specially Assigned),

JJ.
_____

Concurring Opinion by Graeff, J.
_____

Filed:  December 1, 2016

I concur in the judgment only. I write separately because, although I agree that appellant should not have been required to proceed to trial without first having the opportunity to speak with his attorney, I do not agree with the conclusion by the Majority that the circuit court abused its discretion in finding that appellant had no meritorious reason to discharge counsel.

As the Majority points out, Rule 4-215 does not define "meritorious." And although the Court of Appeals has equated the term with "good cause," s*ee Dykes v. State*, 444 Md. 642, 652 (2015), there has been limited guidance regarding what constitutes "good cause" to discharge counsel.

Other courts using a "good cause" standard in this context, however, have been more specific. Scenarios deemed to constitute "good cause" to replace counsel include "a conflict of interest, a complete breakdown of communication, or an irreconcilable conflict which [could] lead . . . to an apparently unjust verdict.'" *McKee v. Harris*, 649 F.2d 927, 931 (2d Cir. 1981) (quoting *United States v. Calabro*, 467 F.2d 973, 986 (1972)), *cert. denied*, 456 U.S. 917 (1982). *Accord United States v. Lott*, 310 F.3d 1231, 1249 (10th Cir. 2002); *State in Interest of J.F.*, 317 P.3d 964, 967 (Utah Ct. App. 2013); 3 LAFAVE ET AL., CRIMINAL PROCEDURE § 11.4(b) (4th ed. 2007) (and cases cited therein). These scenarios represent situations in which a defendant reasonably could believe that an attorney would not competently represent him or her.

Here, there was no allegation of a conflict of interest. And although there were indications of "acrimony" between appellant and Mr. Gordon, there was no allegation that

it rose to the level of an "irreconcilable conflict."[7] The specific allegation here involved a "breakdown of communication." The issue before us is whether there was a "breakdown of communication" of such magnitude that it was an abuse of discretion for the circuit court to deny the motion to discharge counsel.

In determining whether a court abused its discretion in denying a request to discharge counsel due to a breakdown of communication, courts have looked to several factors. The United States Court of Appeals for the Fourth Circuit lists the following factors as relevant: (1) the timeliness of the request; (2) the adequacy of the court's inquiry into appellant's complaint about counsel; and (3) whether appellant and his or her "'counsel experienced a total lack of communication preventing an adequate defense.'" *United States v. Reevey*, 364 F.3d 151, 156 (4th Cir. 2004) (quoting *United States v. Mullen*, 32 F.3d 891, 895 (4th Cir.1994)). The Tenth Circuit applies these factors, as well as a fourth factor: "[W]hether the defendant substantially and unreasonably contributed to the communication breakdown." *Lott*, 310 F.3d at 1250. I agree that these factors are relevant to the analysis whether the court abused its discretion in finding good cause to discharge counsel based on a lack of communication.

Here, application of these factors leads to the conclusion that the circuit court did not abuse its discretion in denying appellant's motions to discharge counsel. The requests

---

[7] "Attorney-client conflicts justify the grant of a substitution motion only when counsel and defendant are so at odds as to prevent presentation of an adequate defense. The general loss of confidence or trust alone is not sufficient to substitute new counsel." *State v. Stenson*, 940 P.2d 1239, 1272 (Wash. 1997) (en banc), *cert. denied*, 523 U.S. 1008 (1998).

to discharge counsel at issue here were made on the date set for trial, after the case already had been postponed three times for appellant to retain counsel. And there is no dispute here that the court conducted an adequate inquiry into appellant's complaint regarding counsel. The first two factors weigh against a finding that the court abused its discretion in denying appellant's motion to discharge counsel.

We thus turn to the third factor, whether appellant and his appointed counsel experienced a "total lack of communication preventing an adequate defense." Defense counsel advised the circuit court that, although he had not had an opportunity to speak with appellant about this specific case, there had been "global discussions" between them about similar robbery charges pending against appellant.[8] The prosecutor stated that he had discussed the case with defense counsel, and defense counsel stated that he was "familiar with" the case and prepared to try the case. Although he requested that the court conduct motions that day and not start the trial until the next day, giving him the opportunity to discuss the specifics of this case with appellant, defense counsel made clear his belief that his lack of communication with appellant, up until that time, did not prevent him from communicating with appellant going forward or from being able to give appellant an adequate defense. *Cf. People v. Gibson*, 6 N.Y.S.3d 198, 199 (N.Y. App. Div. 2015) ("Although the mere complaint by a defendant that communications have broken down

---

[8] The prosecutor referred to multiple robberies as "similar schemes," in which appellant "and a co-defendant . . . made off" with merchandise. Defense counsel also stated that the cases were "all very similar."

between him and his lawyer is not, by itself, good cause for a change in counsel," substitution is proper "where a complete breakdown has been established"; in that case "both defendant and defense counsel agreed that they were unable to communicate."). *See also Mullen*, 32 F.3d at 897 (discharge appropriate where counsel and the defendant would not be able to communicate effectively during trial, "making an adequate defense unlikely").[9] Thus, there was not a showing of a "breakdown of communication" that prevented defense counsel, going forward, from adequately defending appellant.

Finally, with respect to the fourth factor, courts have held that a defendant is not entitled to substitute counsel where he or she is the cause of the communication breakdown. For example, in *United States v. DeTemple*, 162 F.3d 279, 289 (4th Cir. 1998), *cert. denied*, 526 U.S. 1137 (1999), the court upheld the denial of the defendant's request for substitute counsel, noting that the defendant's "own conduct caused the initial lack of communication," and stating that a "court can properly refuse a request for substitution of counsel when the defendant's own behavior creates the problem." *See also State in Interest of J.F.*, 317 P.3d at 968 ("Mother's decision to avoid communicating and cooperating with Counsel was . . . Mother's *choice* to avoid Counsel [and it] did not 'establish[] that a complete breakdown of communication existed.'"); *Sekou v. Warden, State Prison*, 583

---

[9] Here, as noted by the Majority, appellant and defense counsel appeared to communicate during the trial, with defense counsel actively participating in the proceedings, despite appellant's decision to discharge him as counsel. *See United States v. DeTemple*, 162 F.3d 279, 288-89 (4th Cir. 1998) (A "total lack of communication simply does not exist where the attorney and the client communicate significantly during trial."), *cert. denied*, 526 U.S. 1137 (1999).

A.2d 1277, 1282 (Conn. 1990) ("Although under some circumstances a complete breakdown in communication between a defendant and his counsel may warrant appointment of new counsel[,] a defendant is not entitled to demand a reassignment of counsel simply on the basis of a 'breakdown in communication' which he himself induced.") (citations and quotation marks omitted).

Here, the record reflects that appellant was at least partially responsible for the lack of communication with defense counsel. At the December 8, 2014, hearing, defense counsel told the court that he had tried to discuss with appellant his intention to ask the court for a postponement, but if his request was denied, they would go to trial on the simplest of the robbery cases. Counsel noted that appellant, who wanted private counsel to represent him, responded by "screaming at" defense counsel, so counsel "just sort of terminated the conversation." Similarly, in June 2015, on the morning of trial, defense counsel advised the court that he had gone to see appellant in "lockup," but appellant again refused to talk to counsel, stating: "You're not my attorney." These facts support the conclusion that there was not an inability to communicate or a "breakdown of communication," but rather, an unwillingness by appellant to communicate with defense counsel because he wanted to retain private counsel.

In sum, there was no showing that there was an inability to communicate that would interfere with defense counsel's ability to represent appellant. Instead, the record showed a lack of sufficient communication up to that point, which was caused, in part, by appellant's conduct. Given that scenario, and that the request was made the day of trial,

after three postponements for appellant to obtain counsel, I would hold that the circuit court did not abuse its discretion in denying appellant's motion to discharge counsel.

I do agree, however, that appellant should have had the opportunity to consult his attorney prior to the start of trial. In that regard, *In re Shawn P.*, 172 Md. App. 569 (2007), is instructive. In that case, a public defender agreed to enter an appearance and represent a defendant who appeared with no attorney. *Id.* at 572. The public defender asked for a continuance, which the court denied. *Id.* at 574. This Court held that the trial judge "abused his discretion by denying counsel's request for a continuance or, in the alternative and at the very least, by refusing to afford counsel an opportunity to confer with appellant." *Id.* at 588.

Here, defense counsel advised the court that he was prepared to represent appellant, but he requested that trial not start until the next day, after he had an opportunity to confer with appellant. Rather than grant that request, or give defense counsel some time to speak with appellant, the court denied the motion and proceeded with jury selection. *See State v. Hardy*, 415 Md. 612, 627 (2010) (characterizing voir dire as a "meaningful trial proceeding"). In proceeding to trial, without first giving appellant a chance to speak with his attorney about the case, the circuit court abused its discretion. Accordingly, I agree that appellant is entitled to a new trial.